STATE OF NEBRASKA, APPELLEE, V. DOUGLAS W. REITER, APPELLANT.
524 N.W.2d 575

Filed November 8, 1994.    No. A-94-210.

Jerry J. Fogarty, Deputy Hall County Public Defender, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

CONNOLLY, IRWIN, and MILLER-LERMAN, Judges.

MILLER-LERMAN, Judge.

Douglas W. Reiter was convicted in a bench trial in the county court for Hall County of driving under the influence of alcohol and driving while his license was suspended, both second offense, violations of Neb. Rev. Stat. §§ 39-669.07 (Cum. Supp. 1992) and 60-4,108 (Reissue 1993), respectively. His convictions were affirmed by the district court for Hall County. Reiter timely appealed to this court, claiming that the denials of his motions to suppress by the county court, as affirmed by the district court, were improper. For the reasons recited below, we affirm.

## ASSIGNMENTS OF ERROR

Reiter claims that the district court's affirmance of the county court's overruling of his motions to suppress evidence and the county court's admission of such evidence at trial were error.

## SCOPE OF REVIEW

The Nebraska Supreme Court has recently repeated the appellate scope of review regarding claims involving motions to

suppress in *State v. Reimers*, 242 Neb. 704, 705, 496 N.W.2d 518, 520 (1993):

> "In determining the correctness of a trial court's ruling on a motion to suppress evidence claimed to be constitutionally inadmissible, an appellate court will uphold the trial court's findings of fact unless those findings are clearly erroneous. In reviewing a trial court's findings on a suppression motion, an appellate court recognizes the trial court as the 'trier of fact' and takes into consideration that the trial court has observed witnesses testifying regarding such motion." *State v. Thomas*, 240 Neb. 545, 547, 483 N.W.2d 527, 530 (1992). Accord, *State v. Childs, ante* p. 426, 495 N.W.2d 475 (1993); *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992).

Further, in cases where the district court acts as an intermediate court of appeals, both the district court and this court generally review appeals from the county court for error appearing on the record. Neb. Rev. Stat. §§ 25-2733 (Reissue 1989) and 25-1911 (Cum. Supp. 1992).

## FACTS

A review of the record shows that on May 7, 1993, around 3:30 a.m., Officer Tim Meguire of the Grand Island Police Department was on duty patrolling the area near 5th and Cedar Streets when he noticed a brown Buick Riviera proceeding eastbound on 5th Street. The vehicle did not have any license plates and did not appear to have any in-transit tags in the window. Meguire described the vehicle as having darkly tinted windows and a rear window with sharp curves on the sides which came to a point. The vehicle stopped at 5th and Walnut Streets. When the officer still did not see any in-transit tags in the window, he activated his overhead lights and stopped the vehicle in the 400 block of North Walnut. Meguire testified on direct examination that he turned on his spotlight, shined it into the back window, and then noticed a piece of paper in the rear window, but could not tell what the paper said at that point. On cross-examination, Meguire testified that he saw the in-transit tags prior to contact with the driver.

The driver of the vehicle was Reiter. When the officer approached Reiter, he noticed that a strong odor of alcohol was coming from within the vehicle and that Reiter's eyes were bloodshot and watery. Upon conversing with Reiter, Meguire noticed that Reiter's speech was slurred. The officer thereafter administered sobriety tests which the officer stated Reiter failed. Meguire then arrested Reiter. Reiter was charged with driving while under the influence of alcohol and driving while his license was suspended, both second offense.

Prior to trial in county court, Reiter filed two motions to suppress seeking exclusion of evidence and alleging that his arrest was made without probable cause and that the stop which led to evidence of the crimes charged was improper because it was made without a reasonable articulable suspicion of criminal activity in violation of U.S. Const. amend. IV and Neb. Const. art. I, § 7.

A suppression hearing was conducted in county court. Reiter argued that, although the initial stop may have been proper, because he did in fact have proper in-transit tags, the officer's contact with him after the stop revealed the tags was improper, and evidence obtained subsequent thereto should be suppressed. After reviewing the evidence presented at the suppression hearing, the county court judge stated, "I don't think the evidence was real clear when, if ever, the officer discovered that there were perfectly legitimate transit stickers properly affixed . . . ." The county court judge added that he believed that under Nebraska law, contact by the officer with Reiter after the legitimate stop was proper. The motions to suppress were denied. Trial was had by stipulation of evidence, and Reiter renewed his motions to suppress, which were denied. Reiter was convicted on both counts as indicated above.

Reiter appealed to the district court, which approved the county court's rulings on essentially the same grounds and affirmed the convictions. This appeal followed.

## ANALYSIS

Nebraska statutes require registration of vehicles and the proper display of license plates or, for 30 days after purchase, in-transit tags. Neb. Rev. Stat. §§ 60-302 and 60-320 et seq.

(Cum. Supp. 1992 & Reissue 1993).

■ Reiter relies on *State v. Childs*, 242 Neb. 426, 495 N.W.2d 475 (1993), *cert. denied* ____ U.S. ____, 113 S. Ct. 2415, 124 L. Ed. 2d 638, in which the Nebraska Supreme Court concluded that an officer may not properly stop a vehicle with visible in-transit tags to verify compliance with motor vehicle registration statutes. The State responds that the instant case differs from *Childs* in that the officer in *Childs* observed in-transit tags prior to the stop, whereas in the instant case the officer saw neither license plates nor in-transit tags prior to the stop, and thus, the officer reasonably concluded he was witnessing the unlawful activity of improper display of plates or in-transit tags.

The statutory expression requiring "proper display" of plates and in-transit tags logically implies a display which is visible. We note that in other jurisdictions the requisite statutory "display" of plates or temporary registration requires a visible display. See, e.g., *Foster v. State*, 814 S.W.2d 874 (Tex. App. 1991) (holding that stop and detention of vehicle which appeared at time of stop to have no license plate was lawful even though vehicle had temporary paper license displayed in tinted rear window); *State v. Hayes*, 8 Kan. App. 2d 531, 660 P.2d 1387 (1983) (stating that stop for purpose of investigating illegible or obscured license plate was lawful under statute governing display of motor vehicle licenses); *Cheatem v. State*, 416 So. 2d 35 (Fla. App. 1982) (holding that officer had authority to arrest driver outside his jurisdiction during fresh pursuit for failure to display a plainly visible license plate).

■ We recognize that a motorist on a public highway or street has a legitimate expectation of privacy within the vehicle. *Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). However, because of the officer's reasonable, articulable suspicion that he was witnessing a violation of Nebraska criminal law requiring the proper display of license plates or in-transit tags, we conclude that the initial stop of Reiter's vehicle by Meguire was constitutionally proper. See, *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992); *State v. Staten*, 238 Neb. 13, 469 N.W.2d 112 (1991).

Reiter claims that the record establishes that he had proper in-transit tags and that the officer knew this prior to contacting him and becoming aware of his impaired driving condition and his driving under suspension. Thus, Reiter argues that although the initial stop may have been proper, after the officer became aware of registration compliance, he should not have had contact with Reiter. Reiter relies on a case from another jurisdiction to this effect, *State v. Farley*, 308 Or. 91, 775 P.2d 835 (1989). See, also, *State v. Chatton*, 11 Ohio St. 3d 59, 463 N.E.2d 1237 (1984), *cert. denied* 469 U.S. 856, 105 S. Ct. 182, 83 L. Ed. 2d 116.

Reiter's argument rests on the pivotal factual assumption that Meguire determined that Reiter had proper in-transit tags prior to making contact with him. We note from the record, however, that the county court, after observing the officer as witness, found that it was not clear when, if ever, the officer became aware of the in-transit tags. The county court was the trier of fact, and based on the record, we cannot conclude that this finding was clearly erroneous. See *State v. Reimers*, 242 Neb. 704, 496 N.W.2d 518 (1993). Given this finding, Meguire was properly situated where he subsequently and naturally observed evidence of Reiter's impairment and driving under suspension, and the evidence relating to these two offenses need not be suppressed. See *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987).

Following our review of the record, we conclude that the county court's denial of the motions to suppress as affirmed by the district court was proper, and the convictions are therefore affirmed.

AFFIRMED.