**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2009

No. 08-51261

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JUAN BENITO MONTES-HERNANDEZ

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:08-cr-00169

Before KING, DAVIS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

This direct criminal appeal is from the denial of a motion to suppress evidence seized during a traffic stop. Finding no error, we AFFIRM.

I.    FACTUAL AND PROCEDURAL HISTORY

A grand jury returned an indictment charging Juan Benito Montes-Hernandez (Montes) with possessing with intent to distribute five kilograms or more of a mixture containing cocaine and with aiding and abetting. Montes moved to suppress the 9.5 kilograms of cocaine seized during a traffic

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

stop. The initial traffic stop was made on the basis of a perceived violation of Tex. Transp. Code § 502.409(a)(7)(B) (Supp. 2008),[1] which prohibits displaying a license plate with "a coating, covering, protective material, or other apparatus that . . . alters or obscures one-half or more of the name of the state in which the vehicle is registered." In his motion to suppress, Montes's "simple" argument was that because the frame on the license plate did not obscure at least half of the name of the issuing state, there was no violation warranting the traffic stop.

The district court held an evidentiary hearing on the motion to suppress. Montes conceded that if the stop was valid, he was not contesting the validity of his consent to search. Texas Department of Public Safety Officer Danny Nunez (Nunez) testified that on June 27, 2008, he was working at the Interstate 10 and Interstate 20 interchange in Reeves County. At about 4:00 p.m., Nunez observed Montes driving eastbound in front of him on Interstate 10. As Nunez neared Montes's vehicle, he observed that the license plate was "obstructed." Nunez reported that he knew that the plate was not from Texas, but he was unable to discern where the license plate had been issued because of a black frame around the edge. Although Nunez approached the car and drove up alongside Montes's vehicle, Nunez still could not identify the state of origin. Nunez then effectuated the traffic stop.

On cross-examination, Nunez admitted that the only reason for the stop was the obscured license plate. He admitted that upon closer inspection of the vehicle and by looking at the pictures taken of the license plate, he could tell that the plate had been issued in Chihuahua, Mexico. When asked whether he believed that the state name was "half obscured," Nunez responded that it was "obstructed." Nunez maintained that "if you can't read the state, the issuing state, or if it's half or more obstructed, then it's against the traffic law." On

---

[1] In 2007, the Texas legislature added the language that the name of the state issuing the license plate had to be obscured by "one-half or more."

redirect examination, Nunez testified that when he was following Montes's car, he could read the large letters and numbers on the plate, but he was unable to read any of the letters in the state name.

The parties stipulated that the photographs taken of the license plate accurately reflected the condition of Montes's plate at the time of his stop. According to the photographs taken, the letters in the word "Chihuahua" were approximately 1.7 to 1.9 centimeters tall, and approximately 1 centimeter was visible below the black frame. Nunez argued therefore that less than half of the state name was obscured, so under § 502.409 there was no basis for the traffic stop. He asserted that the court should strictly construe the statute and hold that because more than half of the state's name was unobscured, the stop should not be upheld. The government asserted that the stop was reasonable and that it would be unreasonable to require an officer to effectuate a stop and precisely measure the unobstructed portion of the state name before continuing with the stop.

The district court noted that the letters were "pretty durn close to halfway" obstructed and that what was visible could be different while the car was driving down the interstate. From the bench, the court further found as follows:

> The court finds that the officer had reason to believe that the plate – the name on the plate was more than one-half [obscured].
>
> I find that the photographs taken by the [defendant] do not show the vehicle as it was at the time it was driving down the road. And because you're talking about vehicles being [driven] at a speed of anywhere from 50 to 80 miles an hour on the highway . . . on the interstate, that the officer had reason to believe – and it was a reasonable belief – that more than one-half of the name Chihuahua was covered.
>
> I don't believe that the law should be that it's one millimeter, which is what this – less than two millimeters different. In fact, in looking at the plate, you can take the H of Chihuahua and show that

3

. . . the plate cover goes right through the bar of the H of Chihuahua.

The Court finds that . . . the officer['s] belie[f] that . . . the Defendant was in violation of that statute was an objectively reasonable mistake of fact *if* it was not at one-half.

(emphasis added). The district court then orally discussed precedent involving the distinction between an officer's mistake of law and a mistake fact, recognizing that a mistake of law would not justify a traffic stop. Finally, the court orally denied the motion to suppress, ruling as follows:

The Court finds that the trooper knew what the law was, that he believed that the license plate did not conform with the law. And the Court finds that if he did make a mistake, it was a mistake of fact; it was a mistake of fact that was reasonable; it was within one to two millimeters . . . ; and that the officer's mistake of fact did provide the objective basis for reasonable suspicion and probable cause under the Fourth Amendment and allow him to stop the vehicle.

Thereafter, Montes entered a conditional guilty plea, reserving his right to challenge the denial of the motion to suppress. The district court sentenced Montes to serve 70 months in prison and five years of supervised release. Montes now appeals his conviction.

II.   ANALYSIS

A.   Standard of Review

This Court reviews factual findings made by a district court on a motion to suppress for clear error and the district court's ultimate conclusions on Fourth Amendment issues de novo, viewing the evidence in the light most favorable to the prevailing party. *See United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002). "The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). A limited search and seizure is permissible

under the Fourth Amendment, even in the absence of probable cause, when "there is a reasonable and articulable suspicion that a person has committed or is about to commit a crime." *United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000).

However, if the error is not preserved by objection before the district court, it must be reviewed for plain error. To show plain error, the appellant must show (1) an error (2) that is clear or obvious and (3) that affects his substantial rights. *United States v. Baker*, 538 F.3d 324, 332-33 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 962 (2009). Even if such a showing is made, this Court has the discretion to correct the error but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See id.*

The legality of a traffic stop is examined under the two-pronged analysis described in *Terry v. Ohio*, 392 U.S. 1 (1968). *See Brigham*, 382 F.3d at 506. First, the court examines whether the initial official action was justified; second, the court determines whether the subsequent action was reasonably related in scope to either the circumstances that justified the stop or to dispelling a reasonable suspicion that developed during the stop. *Id.* at 506–07. The "traffic detention may last as long as is reasonably necessary to effectuate the purpose of the stop, including the resolution of reasonable suspicion" that emerges during the stop. *Id.* at 512. However, "evidence is not to be suppressed under the exclusionary rule where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized." *United States v. Williams*, 622 F.2d 830, 840 (5th Cir. 1980) (en banc); *see also United States v. DeLeon-Reyna*, 930 F.2d 396, 400–01 (5th Cir. 1991) (en banc). In the instant case, as previously set forth, Montes expressly conceded during the suppression hearing that he was not contesting the consent to search. Thus, on appeal, the only issue is whether the initial stop was valid.

B.    Officer's Mistake of Law

In his brief, Montes first argues that the cocaine discovered during the traffic stop should be suppressed because it was the result of Nunez's mistaken understanding of the law. He maintains that Nunez testified at the hearing that he believed that a license plate violated state law if the state name was either unreadable or "half or more *obstructed*." (emphasis added). Montes notes, however, that the language of the statute states that a plate violates state law if it has a covering that "alters or *obscures* one-half or more of the name of the state in which the vehicle is registered." § 502.409(a)(7)(B) (emphasis added). Montes maintains that because Nunez used the word "obstructed" in his definition of the potential offense, rather than the statutory term "obscured," Nunez did not know how the pertinent violation was defined under state law. Montes also asserts that Nunez's definition established his lack of understanding of the law because he believed he could effectuate a traffic stop if the state name was unreadable *or* the state name was half or more obstructed, which does not comport with the definition in § 502.409(a)(7)(B).

Montes did not, however, specifically challenge the validity of his traffic stop on the ground that the arresting officer stopped him based upon a mistaken understanding of state traffic law. Instead, he argued solely that the district court should apply a strict reading of the statute and conclude that if the actual requirement of one-half of the letters being obscured was not in fact satisfied, the stop was invalid. Although the court ruled that Nunez did not make a mistake of law, the district court did not consider the contention that "obstructed" and "obscured" had different meanings. Thus, as the government contends, this issue should be reviewed for plain error.

The legal justification for a traffic stop "must be objectively grounded." *United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir. 1999) (internal quotation marks and citations omitted). If the conduct the officer perceives to constitute a traffic violation is not a violation of state law, there is no objective

basis for justifying the stop. *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998). In *Miller*, the officer stopped the defendant because the defendant allowed his turn signal to remain on for a period of time without turning or changing lanes. 146 F.3d at 277. This Court held that the officer lacked probable cause to make the initial stop because a plain reading of the statute did not support the view that leaving one's turn signal on without turning was conduct intended to be covered by the statute. *Id*. at 278–79. Similarly, in *Lopez-Valdez*, 178 F.3d at 288–89, this Court held that a stop was impermissible because the officer stopped the defendant's vehicle under the mistaken belief that a cracked tail-light violated state law despite state court precedent establishing that officers lacked authority to stop such vehicles.

Montes has not shown that Nunez's decision to stop him was the result of an error in the officer's understanding of state law. Montes's contention, that Nunez's use of the word "obstructed" rather than "obscured" evinced a lack of understanding of the law, does not amount to error. The words are substantially similar in meaning; "obstruct" means "[t]o clog or block" or "[t]o cut off from sight," while "obscure" means "[t]o make dim or indistinct" or "[t]o conceal." Webster's II New Riverside University Dictionary 811–12 (1988). Indeed, defense counsel himself interchangeably used the terms "obstructed" and "obscured" both in the motion to suppress and during the suppression hearing when referring to the frame covering part of the state name on the license plate. Moreover, Montes's contention is in direct conflict with the district court's finding that "the trooper knew what the law was, that he believed that the license plate did not conform with the law." Montes has not shown that Nunez's failure to use the precise term provided in the statute establishes his lack of understanding of the law.

Additionally, Montes's challenge to Nunez's description of the law does not constitute a "clear or obvious error." Montes focuses on Nunez's explanation of

the statute as a distinction between relating to whether the officer is unable to read the state name or the name is half or more obstructed. However, Nunez's statement could also be read as two different ways of saying the same thing – that the plate was in violation if he could not read it because it was half obstructed.

Even assuming *arguendo* that Nunez's description of the statute in question could constitute a clear error, Montes has not shown that it violated his substantial rights. *See Baker*, 538 F.3d at 332–33. Nunez testified that the reason he could not read the state name on Montes's license plate was because it was covered at least partly by the black frame around the plate. He testified that he could see "the lower half of the letters," but he could not tell from those letters the origin of the plate. Thus, even if Nunez was mistaken in his belief that a mere inability to read an unobscured state name was a ground for stopping a vehicle, his testimony reflected that he was proceeding under the theory that the state name was half obscured by the frame around the license plate, which was a valid legal reason to make the stop. *See* § 502.409(a)(7)(B). Thus, Montes has not established that the district court plainly erred in concluding that Nunez correctly believed he had an adequate legal basis to stop Montes.

C.    Objectively Reasonable Suspicion

Montes also asserts, as he did before the district court, that his motion to suppress should have been granted because Nunez was operating under a mistaken factual belief that the letters of the state were more than half obscured. "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno,* 420 F.3d 420, 430 (5th Cir. 2005). "We have stated previously that reasonable suspicion exists when the officer can point to

specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id*. Further, "reasonable suspicion need not rise to the level of probable cause." *Id*.

Here, the district court ruled that Nunez's belief that the issuing state's name was at least one-half obscured was reasonable. We agree. The measurement of how much of the state's name was obscured was so close to one-half–within a millimeter or two–that the district court was unwilling to expressly find as a factual matter whether the frame covered one-half of the state's name. Also, the district court found that the frame covered the bar of the "H" in the name "Chihuahua." Under these circumstances, we conclude that the officer had an objectively reasonable suspicion that a traffic violation occurred.

Nonetheless, Montes maintains that stopping his vehicle could not have been reasonable because the officer's observations rendered it impossible for the officer to tell whether Montes had *in fact* violated the law. He maintains that if the officer could not tell with certainty that the state name was at least one-half obscured, any attempt to stop the purported offender would be unreasonable. Montes's argument falls by its own weight. To have an objectively reasonable suspicion, an officer does not have to determine that a suspect has in fact violated the law. Here, the district court found that it was a very close call regarding whether the frame obscured one-half of the state's name. Under these circumstances, we find that the arresting officer had an objectively reasonable suspicion that a traffic violation had occurred.

In the alternative, as the district court also found, the officer's alleged mistake of fact regarding whether the frame obscured one-half of the issuing state's name provided the objective basis for reasonable suspicion. *See United States v. Payne*, 534 F.3d 948, 951-52 (8th Cir. 2008) (upholding the traffic stop based upon the officer's mistaken belief that the vehicle lacked a front license plate, in light of conditions making the plate difficult to see); *United States v.*

*Jenkins*, 452 F.3d 207, 212–13 & n.6 (2d Cir. 2006) (upholding a traffic stop based upon an absence of a license plate, even though the vehicle had an inconspicuous temporary plate); *United States v. Cashman*, 216 F.3d 582, 586–87 (7th Cir. 2000) (upholding a traffic stop based upon a "substantial" crack in the windshield, even though the crack may have "stopped just shy of the threshold for 'excessive' cracking or damage" under state law and concluding that a passing officer could reasonably conclude that the cracked windshield violated the law); *see also United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (noting in dicta that an officer's reasonable mistake of fact may support the necessary probable cause or reasonable suspicion); *United States v. Moody*, 240 F. App'x 858, 858–59 (11th Cir. 2007) (finding reasonable suspicion that defendant's windows were too darkly tinted, even though extent of tinting did not in fact constitute a violation).

For the above reasons, the district court's judgment is AFFIRMED.