# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 6, 2012

No. 11-50018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JANET LEE ARCHULETA,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:10-CR-171

Before KING, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Janet Lee Archuleta ("Archuleta") appeals the district court's denial of her motion to suppress evidence obtained during a traffic stop and warrantless search of her vehicle. Specifically, Archuleta contends that all evidence obtained as a result of the stop and the ensuing search should be suppressed as fruit of the poisonous tree because the trooper did not have reasonable suspicion to initiate the traffic stop. We affirm the court's denial of the motion to suppress and Archuleta's subsequent conviction.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50018

# I. Facts & Proceedings

## A. Facts

Archuleta was stopped by highway patrolman Trooper Pearson, who found 376 pounds of marijuana in the backseat of her Chevrolet Blazer. Archuleta was later indicted on one count of possession with intent to distribute between 100 and 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. She filed a motion to suppress the contraband seized in the traffic stop, challenging only the initial stop.[1]

## B. Proceedings

The district court conducted a suppression hearing at which only Trooper Pearson testified. He testified that he had observed Archuleta's car and a van traveling in close proximity to each other on Highway 166 at 5:30 a.m. near Fort Davis, Texas, approximately 40 miles from the Mexican border. He noted that Archuleta's car was from out of state and was neither a newspaper delivery truck, nor a ranch vehicle — typically the only kind of traffic on this road at that hour. Trooper Pearson was initially traveling on that highway in the opposite direction from Archuleta. He turned around and followed Archuleta and observed her weaving within her lane. He then "paced" Archuleta's speed from a distance of approximately 200 yards for two seconds, calculating that she was traveling at 58 miles per hour in a 55 miles per hour speed zone.

Trooper Pearson also testified that, based on his six years of experience, this area of the highway was "known" for trafficking in illegal aliens and drugs; that, except for newspaper delivery and ranch traffic, there is very little traffic in that area at that time in the morning; and that it was still too dark for tourist traffic. Trooper Pearson also stated that, in his experience, weaving within a single lane indicates that the driver is either (1) intoxicated or otherwise

---

[1] Archuleta noted that, "if the stop is thrown out, obviously, everything else is fruit of the poisonous tree and would also be thrown out".

No. 11-50018

impaired by drugs or fatigue, or (2) focusing his or her attention on a following vehicle as potential law enforcement.

During the hearing, Trooper Pearson added his narration to a video recording of the stop. He said that he began pacing Archuleta when she started going down a hill while making a leftward curve. After narrating that he had begun to pace Archuleta, Trooper Pearson stated "[a]nd shortly I will activate my emergency lights, and that's when I looked at my speedometer."

Trooper Pearson also testified about the accuracy of the "pacing" method, which is approved by the Texas Department of Safety ("Texas DPS"). He noted that his car's speedometer had been calibrated in the Ford factory and that he "checks the calibration" of the speedometer against his radar twice daily. Trooper Pearson further testified that he keeps a log of these comparisons in accordance with Texas DPS requirements and that, even though the Texas DPS academy does not provide formal training in pacing, he was trained in the technique "on the job". He testified that, although pacing was not "an exact science," it was "not possible" for his speedometer to be off by, for example, five miles per hour either way, because of the daily comparisons to his radar.

Counsel for Archuleta cross-examined Trooper Pearson, but offered no additional evidence or witnesses for the district court's consideration. Instead, defense counsel ventured that two seconds of pacing with a speedometer provided no reasonable basis on which Trooper Pearson could conclude that Archuleta was driving three miles above the speed limit.

The district court found Trooper Pearson to be a credible witness. Although it noted the additional observations made by Trooper Pearson, the district court specifically held that the trooper had reasonable suspicion to make the traffic stop based on his determination that Archuleta was speeding by pacing her vehicle. The district court noted that Trooper Pearson's speedometer was factory-calibrated and stated that exceeding the speeding limit is prima

No. 11-50018

facie evidence of unlawful behavior. According to the district court, because Trooper Pearson followed the Texas DPS's "required procedures for calibrating the speedometer on a daily basis, and he maintains of [sic] record of each calibration," his method was "objectively reasonable". Therefore, suppression was not warranted because any mistake as to whether Archuleta was speeding was a mistake of fact, not of law.[2]

Archuleta entered a conditional guilty plea, reserving her right to appeal the denial of the suppression motion. The district court sentenced her to 60 months in prison. Archuleta now appeals the district court's denial of her motion to suppress, asserting — for the first time on appeal — that Trooper Pearson initiated the stop before any reasonable suspicion was formed. Archuleta also contends that the district court erred in finding reasonable suspicion because it clearly erred in crediting Trooper Pearson's testimony regarding the accuracy of pacing.

## II. Discussion

### A. Standard of Review

Although the ultimate legal determination of reasonable suspicion is reviewed *de novo*, we review the district court's factual findings — and especially its credibility determinations — for clear error in assessing the denial of a motion to suppress evidence.[3] "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole."[4] "Where a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity

---

[2] Citing *United States v. Montes-Hernandez*, 350 F. App'x 862, 867-868 (5th Cir. Oct. 5, 2009) (unpublished).

[3]   *United States v. Gomez*, 623 F.3d 265, 268 (5th Cir. 2010) (citation omitted).

[4]   *Id.* (citation omitted).

No. 11-50018

to observe the demeanor of the witnesses."[5]  Finally, we review the evidence in the light most favorable to the prevailing party — here, the government.[6]

## B.  Timing of the Stop

For the first time on appeal, Archuleta contends that Trooper Pearson initiated the stop *before* he determined that she was speeding.  In support of this assertion, Archuleta points to Trooper Pearson's testimony at the point that he stated "[a]nd shortly I will activate my emergency lights, and that's when I looked at my speedometer."  According to Archuleta, this statement indicates that Trooper Pearson looked at his speedometer to see if Archuleta was speeding *after* he turned on his emergency lights signaling her to stop.

A "stop" means a restraint of movement, not just a physical stopping.  And, observations made *after* a stop cannot supply or support the reasonable suspicion needed to justify the stop.[7]  Accordingly, if it were clear that Trooper Pearson signaled Archuleta to stop *before* he determined that she was speeding, then the stop would not have been supported by a reasonable suspicion based on speeding.[8]

As Archuleta raises this argument as to the timing of the stop for the first time on appeal, however, the district court had no opportunity to decide whether the stop preceded a determination of reasonable suspicion.  We therefore review

---

[5]  *Id.* (citing *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005)); *see also United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (stating that "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error") (citation omitted).

[6]  *Gomez*, 623 F.3d at 269.

[7]  *United States v. Frisbie*, 550 F.2d 335, 338 (5th Cir. 1977) (noting that a stop occurred when an agent used his flashlight to signal a vehicle to stop) (citation omitted).

[8]  *See id.*

No. 11-50018

this issue only for plain error.[9]  In our plain error review, we consider whether (1) there was error, (2) it was plain, meaning clear or obvious, (3) it affects substantial rights, and (4) allowing that error to stand seriously affects the fairness, integrity, or public reputation of judicial proceedings.[10]

Archuleta's contention that Trooper Pearson initiated the stop before making a reasonable-suspicion determination fails on the first two prongs of the test for plain error because any error was neither clear nor obvious.  At worst, Trooper Pearson's testimony is ambiguous.  His testimony could be interpreted to mean that he activated his lights either (1) before looking at his speedometer or (2) simultaneously while looking at his speedometer.  Therefore, it is not clear or obvious that Trooper Pearson signaled Archuleta to stop before he observed the speed of her vehicle.  The district court determined that Trooper Pearson's testimony was credible, and because we can find no clear or obvious error with respect to that determination, we conclude that district court did not commit plain error in denying suppression.

## C.  Reasonable Suspicion

Archuleta also challenges the district court's conclusion that Trooper Pearson had reasonable suspicion to make the traffic stop, claiming that the court committed clear error by crediting the trooper's testimony regarding the accuracy of the "pacing" method.  Archuleta essentially asserts that "pacing" is an "implausible" technique for gauging a vehicle's speed.  She advances a number of claims in support of this contention:  (1) The technique is not taught by the Texas DPS, (2) the government never produced the actual Texas DPS policy that permits the use of pacing in court, and (3) a stop based on pacing a

---

[9]  *United States v. Newman*, 472 F.3d 233, 236-37 (5th Cir. 2006).

[10]  *Id.*; *United States v. Olano,* 507 U.S. 725, 734 (1993).

vehicle at 58 miles per hour in a 55 mile per hour zone — just three miles per hour over the speed limit — has never been approved by the Fifth Circuit.[11]

In light of the deference given to a district court's factual determinations based on live testimony, we conclude that the district court did not commit clear error in crediting Trooper Pearson's testimony regarding pacing. As noted, Trooper Pearson was the only witness to testify during the suppression hearing. There does not appear to be — and Archuleta does not offer — any extrinsic evidence to contradict Trooper Pearson's testimony. Trooper Pearson testified expressly that pacing was an officially approved technique, and, without any evidence to contradict this statement, Archuleta's assertion that (1) the technique is not taught by the Texas DPS, and (2) the government did not physically produce the actual policy on pacing, is irrelevant. Although the district court's statement that the Trooper Pearson "calibrated" his speedometer daily is incorrect, it is harmless in light of his testimony that he "checks" the calibration daily and logs his observations in accordance with official requirements. We note that the district court had the opportunity to observe the demeanor of the trooper, and, without more, Archuleta has not established clear error as to this issue. And, contrary to Archuleta's assertion, we have previously approved pacing as an acceptable method for establishing reasonable suspicion.

In *United States v. Castro*, we approved a traffic stop in which the officer determined that the defendants were speeding based on pacing.[12] Although the officer in that case paced the defendants for "several miles", we focused our discussion on the district court's credibility determination with respect to the

---

[11] Archuleta cites to the following cases in support of this last contention: *Castro*, 166 F.3d at 733; *Veney v. Ojeda*, 321 F. Supp. 2d 733 (E.D. Va. 2004).

[12] 166 F.3d at 733-34. The officer in *Castro* also observed that the defendants were not wearing seatbelts, but the panel held that the officer had reasonable suspicion based on either the speeding or the seat belt violations.

testimony of the officer and the defendants. The *Castro* panel noted that the district court had heard the defendants' testimony that the officer's speedometer was not accurate and that their own car's speedometer did not register that they were speeding. The panel further observed that the district court had "expressly found that the [defendants' car] was in fact speeding" by crediting the officer's testimony over that of the defendants.[13] The panel then concluded that "[o]n the record of this case, we are not prepared to say that the district court's credibility determinations and ensuing factual findings were clearly erroneous."[14]

As in *Castro*, the district court in this case heard the testimony of the trooper — but, unlike the court in *Castro*, heard no contradictory testimony from the defendant — and made the factual determination that his testimony was credible. Without any other evidence or witnesses contradicting Trooper Pearson's testimony, this issue rests solely on his credibility. Consistent with the *Castro* panel's emphasis that "credibility determinations are for the district court,"[15] we conclude that here the district court did not commit clear error.[16]

Furthermore, even if Trooper Pearson was mistaken that Archuleta was in fact speeding, we agree with the district court that his method of pacing was objectively reasonable in light of the district court's credibility determination

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] We note that Archuleta relies on the fact that the defendants in *Castro* were not wearing seatbelts to distinguish *Castro* from the instant case. Such a distinction is not dispositive because the panel in *Castro* treated this finding separately from the officer's pacing of the vehicle. Furthermore, the distinction that Archuleta draws between the instant case and *Veney v. Ojeda*, 321 F. Supp. 2d 733 (E.D. Vir. 2004) also has no bearing on this case. Although the officer in that case paced the plaintiff's vehicle for "one-third of a mile", the court also noted that neither the plaintiff nor the driver of the vehicle testified that he or she was driving at or below the speeding limit. Like the plaintiff in *Veney*, Archuleta does not contend that she was not speeding; she simply asserts that Trooper Pearson's testimony with respect to the pacing method is implausible.

No. 11-50018

regarding the trooper's testimony.[17] Because Trooper Pearson had an objectively reasonable basis for initiating the stop, any *factual* mistake as to whether Archuleta was speeding does not diminish the trooper's *legal* basis to make the stop.[18]

### III. Conclusion

The district court's denial of Archuleta's motion to suppress and Archuleta's subsequent conviction is AFFIRMED.

---

[17] *Montes-Hernandez*, 350 F. App'x at 867-68.

[18] *See id.* (noting that the issue of whether one-half of the state name on a license plate was actually obscured was "a very close call" and, under such circumstances, the officer had an "objectively reasonable suspicion" that a traffic violation had occurred).