RILEY, Chief Judge,
dissenting.
The court unduly complicates a straightforward case which turns on a simple question: Could a reasonable Nebraska law enforcement officer look at a license plate with more than half of the state name concealed[12] and conclude the “let *724 ters” of the state name were not “clear and distinct ... so that they [were] plainly visible”? Neb.Rev.Stat. § 60-399(2). Of course the officer could. The experienced officer in this case — with over twenty years patrolling for the Douglas County, Nebraska, Sheriffs Department — thought so. The magistrate judge — who has more than three decades of judicial service at the Nebraska state and federal levels— thought so, as did the experienced district judge. I think so too. Even Martins at the time of the stop told Deputy Wintle “he was aware of [the license plate] violation, and he had been stopped for it in the past.” These conclusions are overwhelmingly supported by precedent from this circuit,[13] other circuits,[14] and other states,[15] interpreting similarly worded statutes.
The majority not only devises an unprecedented interpretation of § 60-399(2) — an interpretation I am confident the Nebraska Supreme Court will reject when given the opportunity — but decrees that the contrary interpretation adopted by the experienced Nebraska officer, magistrate judge, district judge, and this circuit judge is beyond the objective pale of reason. Believing the opposite is true, I respectfully dissent.
A. Fourth Amendment
“Under the Fourth Amendment, a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred.” United States v. Washington, 455 F.3d 824, 826 (8th Cir.2006). “Articulating precisely what ‘reasonable suspicion’ and ‘probable cause’ mean is not possible. They are commonsense, nontechnical conceptions that deal with ‘the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.’” Ornelas v. United States, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (emphasis added) (quoting Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
“A law enforcement officer has reasonable suspicion when the officer is aware of ‘particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.’ ” United States v. Houston, 548 F.3d 1151, 1153 (8th Cir.2008) (quoting United States v. Martin, 706 F.2d 263, 265 (8th Cir.1983)). In reviewing reasonable suspicion determinations, the Supreme Court explains we must:
give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.
Ornelas, 517 U.S. at 699, 116 S.Ct. 1657 (emphasis added). Reasonable suspicion *725 to support a traffic stop requires far less evidence of guilt than “ ‘would justify condemnation’ or conviction,” Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (quoting Locke v. United States, 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364 (1813) (Marshall, C.J.)).
“The determinative question is not whether [Martins] actually violated [§ 60-399(2) ], but whether an objectively reasonable police officer could have formed a reasonable suspicion that [Martins] was committing a [statutory] violation.” United States v. Martin, 411 F.3d 998, 1001 (8th Cir.2005). “Even if [Deputy Wintle] was mistaken in concluding that a traffic violation occurred, the stop does not violate the Fourth Amendment if the mistake was an ‘objectively reasonable one.’” United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir.2007) (quoting Martin, 411 F.3d at 1001).
Though the majority concedes “we should not expect state highway patrolmen to interpret the traffic laws with the subtlety and expertise of a criminal defense attorney,” ante at 716 (quoting Martin, 411 F.3d at 1001) (internal marks omitted), the majority requires precisely that — and more. The majority acknowledges “[t]he objective standard governing an officer’s decision to stop a motorist protects officers who have a mistaken belief that a traffic law is being broken,” id. at 715 (citing United States v. Sanders, 196 F.3d 910, 913 (8th Cir.1999)), yet concludes not only that Deputy Wintle made a mistake, but that “Deputy Wintle’s mistake [was] not excusable as a reasonable mistake” because, in the majority’s view, Martins’s plate was “reasonably readable” or “generally readable” at some unspecified “reasonable” distance. Ante at 715-17. Without explanation, the majority reassures us “a great deal of flexibility remains within which an officer might reasonably stop a car under the authority of § 60-399(2)”— just not in this case. Ante at 716 n. 3.
If officers retain “a great deal of flexibility” in determining whether an obstructed plate violates the statute, surely an experienced officer who was unable to readily identify the plate as Martins passed him on the interstate had a reasonable basis to believe the name of the issuing state was sufficiently obstructed to no longer be “clear and distinct” and “plainly visible” as required by § 60-399(2), even if a majority of this panel later finds there was no violation. See United States v. Smart, 393 F.3d 767, 771 (8th Cir.2005) (“The possibility that there was no violation, and the subsequent determination that there was not, does not mean that the initial suspicion was unreasonable.”).
The majority’s analysis suffers from three main flaws: first, the majority is too quick to reject the district court’s harmonization of Deputy Wintle’s testimony, see Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (“If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” (emphasis added)); second, the majority’s interpretation of § 60-399(2) does not give the statute its plain and ordinary meaning as required by Nebraska law; and third, the majority’s opinion leaves no room for reasonable mistakes.
B. Deputy Wintle’s Testimony
After reviewing Deputy Wintle’s hearing testimony and observing him testify at trial, the district court found Deputy Wintle credible and found “no material discrepancies” between his suppression hearing and *726 trial testimonies. Despite acknowledging “that ‘[w]here there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous,’ ” the majority “disagree^]” with the district court, finding Deputy Wintle’s testimony “at trial that he could read Martins’s license plate” rendered the district court’s factual findings regarding the plate clearly erroneous. Ante at 714, 714-15, 719 n. 9 (quoting Anderson, 470 U.S. at 574, 105 S.Ct. 1504). The majority then “aecept[s] as true the facts as described in Deputy Wintle’s later-given trial testimony ..., i.e., that Deputy Wintle was able to read the issuing state’s name on Martins’s license plate from within 100 feet while traveling on 1-80.” Ante at 714-15. Although I suggest the majority’s factual analysis “oversteps the bounds” of our duty as an appellate court reviewing for clear error, Anderson, 470 U.S. at 573, 105 S.Ct. 1504 (“The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court.”); see also Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (“In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues de novo.” (emphasis added)), the majority also reads too much into this one phrase from Deputy Wintle’s trial testimony.
At trial, Deputy Wintle testified he did not “believe [he] actually drove up beside [Martins] but came within a hundred feet of [Martins] to see the plate.” (Emphasis added). Even if we assume the slight differences between Deputy Wintle’s testimonies required the district court to base its factual findings only on one phrase in Deputy Wintle’s trial testimony, that testimony cannot bear the load the majority places on it because it does not establish exactly how close to the vehicle Deputy Wintle had to get to read the plate. The majority decides the plate was “readable from 100 feet,” even “notfing] that 100 feet is approximately six to seven average vehicle lengths, and this spacing does not require Deputy Wintle to tailgate Martins or follow him at an unsafe distance to ascertain the issuing state’s name on Martins’s license plate.” Ante at 715-16, 717 n. 4, 718.
But none of that factfinding is in the record. Deputy Wintle testified in context that he “accelerated up and drove up close to [Martins]” and “had to get close to the vehicle before [he] could actually see what state the vehicle was from” but not so close as to “actually dr[i]ve up beside [Martins].” (Emphasis added). Beyond that, Deputy Wintle’s testimony does not specifically say how close within the range of that “100-foot distance” Deputy Wintle had to get to Martins’s vehicle to decipher the obstructed name of the issuing state. Ante at 717 n. 4. Critically, the video recording of the traffic stop indicates Deputy Wintle did not identify Martins’s license plate to the dispatcher until Martins had exited the interstate and both vehicles were nearly stopped on the shoulder. At that point, Deputy Wintle was no more than one or two “average vehicle lengths” from Martins’s license plate when he identified Utah as the issuing state-a short distance well “within 100 feet of Martins’s vehicle.” Ante at 714. The video fully supports Deputy Wintle’s testimony that he “never really g[o]t close enough to [Martins’s vehicle to see the plate clearly] until the final traffic stop.” These key undisputed record facts, ignored by the majority, mean the district court’s findings are at the very least plausible. And that is all we can ask for on appeal. See Anderson, 470 U.S. at 573-74, 105 S.Ct. 1504.
*727 C. Plain Meaning of § 60-399(2)
Section 60-399(2) requires “[a]ll letters, numbers, printing, writing, and other identification marks” on a license plate “be kept clear and distinct ... so that they shall be plainly visible at all times.” As should be clear from the majority opinion, the Nebraska Supreme Court has not interpreted § 60-399(2), and the few lower court cases considering related issues have not examined the statutory language at issue in this case. See, e.g., ante at 718 n. 6, 719 n. 8 (explaining that two of the three Nebraska cases the majority cites in construing § 60-399 involved a different statutory scheme that only required motorists to “display” the license plates and that the court in State v. Reiter, 3 Neb.App. 153, 524 N.W.2d 575, 578 (1994), “did not elaborate on what, exactly, ‘visible’ ” meant as used in the opinion but not in the statute). Under Nebraska law, “statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.” State v. Sikes, 286 Neb. 38, 834 N.W.2d 609, 614 (2013). The plain and ordinary meaning of the operative terms in § 60-399(2) demonstrates Deputy Wintle had an objectively reasonable basis for the stop.
Definitions of the term “clear” include “easily visible or distinguishable” and “free from obstruction, burden, limitation, defect, or other restricting features.” Webster’s Third New International Dictionary 419 (1993). The term “distinct” means “capable of being easily perceived” and “readily seen ... through sharp, clear, unmistakable impression: not blurred, obscured, or indefinite.” Id. at 659. Definitions of the term “plainly” include “with clarity of perception or comprehension,” “clearly,” “in unmistakable terms,” and “in a plain manner.” Id. at 1729. And “visible” means “easily seen” and “conspicuous.” Id. at 2557. Martins’s plate does not readily fit these definitions.
Construing some of the same statutory terms, the Wyoming Supreme Court, which the Nebraska Supreme Court has long consulted in matters of statutory interpretation, see, e.g., Sullivan v. Storz, 156 Neb. 177, 55 N.W.2d 499, 502 (1952) (citing Anderson v. Englehart, 18 Wyo. 196, 105 P. 571, 575 (1909)), recently held “[t]he requirements that a license plate be ‘plainly visible’ and ‘clearly legible’ indicate that a license plate must not be obstructed in any manner.” Parks v. State, 247 P.3d 857, 860 (Wyo.2011) (emphasis added). The court reasoned, “This interpretation is in accord with the purpose of the statute. License plates need to be easily read in order to facilitate law enforcement and ordinary citizens in reporting and investigating hit-and-run accidents, traffic violations, gas-pump drive offs, and other criminal activity.” Id.
A California appeals court reached the same conclusion, holding similar statutory language indicated the legislature intended “the view of the license plate be entirely unobstructed.” People v. White, 93 Cal.App.4th 1022, 113 Cal.Rptr.2d 584, 586 (2001) (emphasis added). The court determined the legislature, by using the unambiguous phrase “clearly visible,” “meant a license plate must not be obstructed in any manner and must be entirely readable.” Id. (emphasis added). This rationale is persuasive and strongly suggests the Nebraska legislature intended to prohibit obstructing license plate lettering in any manner and even to a minor degree.[16] *728 Put simply, a partially obstructed plate is not “clear and distinct” so as to be “plainly visible.”
Here, there is no real question but that the rear-view camera partially obstructed the lettering on Martins’s plate. Given the breadth of the plain language in § 60-399(2) and the “great deal of flexibility” afforded to officers in the field, an objectively reasonable officer could conclude Martins’s admittedly obstructed plate was not “clear and distinct” so as to be “plainly visible” as required by the applicable Nebraska law now.
The majority finds this commonsense interpretation objectively unreasonable and .therefore the stop unconstitutional, but Deputy Wintle and the district court are far from alone in construing the display statute that way. There is ample authority finding a reasonable basis for similar stops under strikingly similar circumstances. See, e.g., United States v. Boyd, 388 Fed.Appx. 943, 947 (11th Cir.2010) (unpublished per curiam) (holding that a license plate frame obscuring the registration decal provided an officer probable cause to believe a motorist violated a state law requiring “ ‘all letters, numerals, printing, writing, and other identification marks’ ... to be ‘clear and distinct ... so that they will be plainly visible and legible’ ” quoting Fla. Stat. § 316.605(1)); United States v. Montes-Hernandez, 350 Fed.Appx. 862, 868 (5th Cir.2009) (unpublished per curiam) (similar); Davis v. Novy, 433 F.3d 926, 928, 930 (7th Cir.2006) (same); United States v. Arciga-Bustamante, 276 Fed.Appx. 716, 717, 719-20 (10th Cir.2006) (unpublished) (same); United States v. Vargas, 57 Fed.Appx. 394, 396-98 (10th Cir.2003) (unpublished) (same); United States v. Walton, No. 1:03—00014, 2004 WL 3460842, at *4 (M.D.Tenn. Nov. 12, 2004) (same); Nelson v. State, 247 Ga.App. 455, 544 S.E.2d 189, 190 (2001) (same).
In rejecting the district court’s reasonable interpretation of § 60-399(2), the majority turns the logic of these cases upside down. Rather than give the terms “clear” and “distinct” their plain meaning, the majority ignores those clear terms. The majority reduces the broad, descriptive phrases “clear and distinct” and “plainly visible” to vague variations of the solitary term “readable.” [17] Ante at 715-17. The Nebraska legislature did not choose the readily available term “readable,” a term with a different and narrower meaning than “clear and distinct” and “plainly visible at all times.” While it makes sense to consider readability in determining whether a license plate violates § 60-399(2), given its purpose, nothing in the unambiguous *729 statutory language supports making simple readability the determinative factor.
Indeed, Martins himself, relying on Reiter — the same case as the majority— reaches the opposite conclusion of the majority, asserting “Neb.Rev.Stat. § 60-399(2) does not mandate that a plate be ‘clearly visible’ or ‘readable.’ ” It also does not follow that a plate that is “readable” is automatically “clear and distinct” and “plainly visible.” See, e.g., People v. Duncan, 160 Cal.App.4th 1014, 73 Cal.Rptr.3d 264, 268 (2008) (concluding a plate mounted upside down — though readable — was not “clearly legible” or easily readable because mounting the plate upside down made “the plate more difficult or confusing to read”).
We have previously rejected the suggestion that an officer’s ability “to read [a] plate while following” a vehicle meant “there was no violation of [local laws requiring the plate be ‘plainly visible’] and thus no probable cause for the stop.” Harris, 617 F.3d at 978. In Harris, we concluded the traffic stop did not violate the Fourth Amendment because, as in the present case, (1) “the district court believed the officer’s testimony that the license plate was not plainly visible,” (2) that “determination, based on credibility, [was] not clearly erroneous,” and (3) “[t]he officer’s conclusion ... was objectively reasonable, as it complie[d] with Missouri decisions interpreting a similarly-worded state statute.” Id. at 979. We should follow our existing precedent and reach the same result here.[18] See Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir.2002) (per curiam) (“It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.”).
Despite the remarkable similarities between Harris and this case, the majority attempts to distinguish the case, “differen-tiat[ing] between a plate so obscured that an officer” “had to get right up on the vehicle to get the license plate ” and Martins’s admittedly obstructed plate. Ante at 718 (quoting Harris, 617 F.3d at 978) (internal quotation marks omitted). But Deputy Wintle’s trial testimony, accepted as true by the majority, ante at 714-15, indicated Deputy Wintle “had to get close to the vehicle before [he] could actually see what state the vehicle was from” because the “camera mounted to the top of the plate ... was obstructing the plate.” (Emphasis added). There is simply no material difference between “get[ting] right up on the vehicle” in Harris and “get[ting] close to the vehicle” here. Therefore, Harris should control this case under the same “practical and objectively reasonable standard.” Ante at 718.
To adopt the majority’s reasoning, “ ‘one must add words to the statute that simply are not there.’ ”[19] State v. Magallanes, 284 Neb. 871, 824 N.W.2d 696, 701 (2012) (quoting State v. Medina, No. A-11-377, 2011 WL 2577268, at *3 (Neb.Ct.App. June 28, 2011) (unpublished)). This we should not do. See Lozier Corp. v. Douglas Cnty. Bd. of Equalization, 285 Neb. 705, 829 *730 N.W.2d 652, 656 (2013) (“We give statutory language its plain and ordinary meaning, and we will not read into a statute a meaning that is not there.”) (footnote omitted).
D. Objectively Reasonable Officer
Even if the experienced lower court judges and I are wrong about how the Nebraska Supreme Court would interpret § 60-399(2), see Smart, 393 F.3d at 771, at least our reasoning illustrates the meaning of the statute was sufficiently uncertain to make Deputy Wintle’s interpretation reasonable. See United States v. Rodriguez-Lopez, 444 F.3d 1020, 1022-23 (8th Cir.2006) (“Fortunately, we need not decide this issue [of statutory interpretation] because the resolution of the case turns upon whether [the officer’s] belief that the statute was violated was objectively reasonable not whether it was in fact violated.”). Whatever the correctness of the majority’s statutory interpretation, Deputy Wintle did not have the benefit of that interpretation — or any guidance from the Nebraska courts on the statute at issue — at the time of the stop. See Washington, 455 F.3d at 827 (explaining prior judicial interpretations of a statute are “relevant to the objective reasonableness of the officer’s belief’).
The real question at this stage is not whether Deputy Wintle erred in interpreting the statute and believing he had a reasonable basis for the stop, but whether Deputy Wintle so obviously erred that no objectively reasonable officer could have reached that conclusion at the time of the stop. The Fourth Amendment allows room for reasonable mistakes in determining whether a motorist has violated a traffic law. Martin, 411 F.3d at 1002. (“[A] misunderstanding of traffic laws, if reasonable, need not invalidate a stop made on that basis.”). And we routinely uphold traffic stops where “an expert defense attorney, and even a federal judge [or two], ultimately might conclude that the plain language of the [statute] technically requires” a different legal conclusion than that reached by the officer in the field. Id. at 1001-02 (deciding a traffic law’s “level of clarity [fell] short of that required to declare [the officer’s] belief and actions objectively unreasonable”); see also, e.g., United States v. Hastings, 685 F.3d 724, 727-28 (8th Cir.2012) (declining to determine whether a motorist’s conduct “in fact” violated state law “because it was objectively reasonable for [the officer] to conclude that it” did); Sanders, 196 F.3d at 913 (refusing “to parse the words of [a] statute in determining whether [the officer] had probable cause to stop the vehicle” because the officer had an objectively reasonable basis for believing the motorist breached a traffic law regardless of whether an actual violation existed). It is not clear to me why the majority alters our usual practice in this case.
Under the majority’s holding, Deputy Wintle could only have avoided running afoul of the Fourth Amendment if he had accurately predicted the majority’s interpretation of the statute and broken off pursuit once he was able to read Martins’s plate within some unspecified “reasonable distance.” Ante at 714. The Fourth Amendment does not require officers to have such a technical understanding of the traffic code. See Ornelas, 517 U.S. at 695, 116 S.Ct. 1657. Yet the majority requires Deputy Wintle to understand § 60-399(2) in a way most accomplished jurists have not.
E. Conclusion
If other federal and state courts consistently reach different conclusions from the majority’s opinion here as to the meaning of the same or similarly worded statutes, *731 how can this court fault Deputy Wintle for failing to anticipate the majority’s unique interpretation of § 60-399(2)? I do not fault Deputy Wintle for his lack of psychic skill.
Based on the plain meaning of § 60-399(2) and Deputy Wintle’s field observations of Martins’s admittedly obstructed plate, as documented on the video recording of the stop and the attached record photographs of Martins’s vehicle, I agree with the district court that Deputy Wintle had a reasonable basis to believe Martins’s plate was not “clear and distinct” so as to be “plainly visible” as required by Nebraska law. Even assuming the plate were “not technically in violation of the statute,” Sanders, 196 F.3d at 913, Deputy Wintle’s “mistake was an ‘objectively reasonable one.’ ” Herrera-Gonzalez, 474 F.3d at 1109 (quoting Martin, 411 F.3d at 1001). The traffic stop did not violate the Fourth Amendment, and Martins’s remaining arguments are without merit. I would affirm.
APPENDIX TO THE DISSENT OF RILEY, C.J.
[[Image here]]
Plaintiffs Exhibit 2
*732 [[Image here]]
Plaintiffs Exhibit 3

. The district court found, as a matter of fact, the record photographs of the rear of Martins’s vehicle, which were “taken at a direct angle, i.e., the same height as the plate,” showed that the rear-view "camera obscure[d] the top half of the name of the issuing state: ‘Utah’ " — meaning "[a]nyone viewing the license plate, e.g., any driver of another vehicle, would see less than half the lettering identifying the issuing state.” Mindful that "[o]ne picture can be worth a thousand words[,] [a]nd fewer words are sometimes better than many,” United States v. Walton, 207 F.3d 694, 699 (4th Cir.2000) *724 (Wilkinson, C.J., concurring), I append two photographs of the plate in question to allow the reader to determine whether the obstruction of the issuing state is as "de minimis” as the majority claims. Ante at 715-16.

. See, e.g., United States v. Harris, 617 F.3d 977, 978-79 (8th Cir.2010) (determining a Missouri police officer reasonably interpreted a statute requiring license plates to be “plainly visible” to require more than mere readability).

. See, e.g., Hinojosa v. State, 319 S.W.3d 258, 262 (Ark.2009) (deciding officers had probable cause to believe a license plate frame that obscured the state name, making the plate more difficult to read, violated a state law requiring that license plates be "clearly visible”).

. The majority's brief analysis of the unpublished opinion in State v. O’Dell, No. A-01-1274, 2002 WL 31107578, at *6 (Neb.Ct.App. Sept. 24, 2002) (unpublished), does not per *728 suade me otherwise. Ante at 718-19 & n. 8. As the O’Dell court noted, the statute at issue in that case criminalized the "improper display” of license plates and said nothing about the "proper display” of plates or anything remotely related to the present requirement (since 2005) that a plate be "clear and distinct” so as to be "plainly visible.” Id. The O’Dell court explained that in implying that the “proper display” of plates required a plate that was "visible,” the Reiter panel "bootstrap [ped] a holding from statutory language which d[id] not exist.” Id. The O'Dell court held, "Thus, to the extent that [Reiter] holds or suggests that there is a crime of 'improper display’ of plates if a law enforcement officer cannot see 100 percent of the plate, we disagree with Reiter. It therefore logically follows that an officer stopping a vehicle for the reason that a trailer hitch partially interferes with his or her view of a number on a rear license plate is acting without legal authority and stopping a citizen for a crime which does not exist.” Id. O’Dell is inapposite.

. I have little doubt officers in the held will struggle to determine what the majority means by "reasonably readable” or "generally readable ... from within a reasonable distance.” Ante at 715-17.

. The absence of a definitive interpretation of § 60-399(2) by the Nebraska courts does not deprive Deputy Wintle's interpretation of objective reasonableness, particularly given the authority applying similar state statutes the same way. See United States v. Coleman, 700 F.3d 329, 334-35 (8th Cir.2012) ("Considering the precedent at the time of the stop [including the lack of authoritative interpretation from the Nebraska Supreme Court], [the officer] had an objectively reasonable basis for believing [the motorist] violated the statute.").

. The majority’s reliance on Reiter is problematic for the same reason. As noted above, the O’Dell court criticized Reiter for "boot-strapfing] a holding from statutory language which d[id] not exist.” O’Dell, 2002 WL 31107578, at *6.