STATE OF NEBRASKA, APPELLEE, V. STEVEN W. CHILDS, APPELLANT.
495 N.W.2d 475

Filed February 12, 1993.    No. S-91-192.

David W. Childs for appellant.

Don Stenberg, Attorney General, and Gary P. Bucchino, Omaha City Prosecutor, and J. Michael Tesar for appellee.

Michael F. Gutowski for amicus curiae Nebraska Civil Liberties Union Foundation.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Pursuant to Neb. Rev. Stat. § 24-1107 (Cum. Supp. 1992), this court has accepted the petition of Steven W. Childs for our review of the decision by the Nebraska Court of Appeals, namely, *State v. Childs*, 1 NCA 478 (1992), wherein the Nebraska Court of Appeals affirmed Childs' conviction of driving while under the influence of alcohol (drunk driving), in violation of Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1990). At issue is the refusal of the district court for Douglas County to suppress evidence obtained at the time of Childs' arrest and used by the State for Childs' conviction in a bench trial.

Around 2:30 a.m. on October 16, 1990, Officer Greg Wyant of the Omaha Police Division was on routine cruiser patrol near 60th and Northwest Radial Highway in Omaha when he observed a blue 1989 Ford Tempo moving on the highway. Wyant saw nothing suspicious or out of the ordinary about the general appearance of the Ford or its operation, that is, no appearance of physical deficiency of the car, such as a missing or burned-out headlight, no unusual or erratic movement, and nothing unlawful in the driver's handling of the automobile. However, from his cruiser Wyant did see "In Transit" stickers

or decals displayed on the Ford's front and rear windows. At that time, Wyant did not know who was driving the Ford, although the driver was later identified as Childs. Also, Wyant had no information that a vehicle, matching the description of the Ford, or its occupant had been involved in any criminal activity. Nevertheless, Wyant stopped the Ford, walked by the "In Transit" sticker displayed on one of the Ford's windows, noted that the sticker was still within the In Transit period and was therefore valid, and then went to the driver's window where he asked Childs for a bill of sale and motor vehicle registration for the Ford. During this exchange, Wyant noticed that Childs exhibited "symptoms of intoxication." As a result of field sobriety tests administered to Childs, Wyant arrested him for drunk driving.

After the drunk driving complaint was filed in the district court, Childs filed his suppression motion, seeking exclusion of evidence obtained as the result of Wyant's stop which, Childs claimed, was an unlawful stop with a consequent unreasonable search and seizure contrary to U.S. Const. amend. IV and Neb. Const. art. I, § 7.

At the suppression hearing, Wyant testified about his general observations of Childs' Ford shortly before the highway stop. During his testimony, Wyant acknowledged that while he was in his cruiser and before he stopped Childs, he did see the In Transit stickers or decals displayed on the windows of Childs' car. The decals inside Childs' Ford satisfied the printing and display requirements of Neb. Rev. Stat. § 60-320(3)(b) (Reissue 1988) (window display, front and rear, of a decal on which In Transit shall be printed in black letters at least 2 inches high). As Wyant confirmed, each of the displayed decals on Childs' car was "a legal in-transit from a dealer." Wyant also testified that his sole reason or purpose for stopping Childs' car was "to check the validity of the in-transits" and that he had no information or indication that any Nebraska law or Omaha ordinance had been violated, or was being violated, by Childs, either apart from his driving or while driving the Ford that Wyant stopped.

The district court denied Childs' suppression motion. At his bench trial, Childs renewed his constitutional objection that

Wyant obtained evidence in violation of Childs' right to be free from an unreasonable search and seizure by police. See, U.S. Const. amend. IV; Neb. Const. art. I, § 7. Subject to Childs' constitutional objection, the State introduced evidence, obtained after Wyant stopped Childs, showing that Childs was under the influence of alcoholic liquor when Wyant stopped Childs' automobile. See § 39-669.07. The court found Childs guilty of drunk driving and imposed a sentence on him.

In Childs' appeal to the Nebraska Court of Appeals, the focal point became several Nebraska statutes pertinent to registration of motor vehicles.

Neb. Rev. Stat. § 60-302 (Cum. Supp. 1990) provides that "[n]o motor vehicle . . . unless otherwise expressly provided, shall be operated on the highways of this state unless such vehicle is registered in accordance with Chapter 60, article 3." Any person who operates a vehicle which has not been registered is subject to the penalty for a Class III misdemeanor. See Neb. Rev. Stat. §§ 60-302.03 and 39-6,188 (Reissue 1988). Section 60-320(3)(b), the statute in effect when Childs was arrested, provided an exception to the registration requirement: A person who purchases a motor vehicle from a licensed dealer may drive the vehicle on a Nebraska highway

> without charge or registration of such vehicle or trailer. There shall be displayed on the front and rear windows of such motor vehicle . . . a decal on which shall be plainly printed in black letters not less than two inches high the words In Transit. . . . Such transit decal shall allow such owner to operate the motor vehicle . . . for a period of fifteen days in order to effect proper registration of the new or used motor vehicle or trailer . . . . Upon demand of proper authorities, there shall be presented by the person in charge of such motor vehicle or trailer, for examination, a duly executed bill of sale therefor, a certificate of title, or other satisfactory evidence of the right of possession by such person of such motor vehicle . . . .

Section 60-320(5) states in part that "[i]t shall be the duty of all law enforcement officers to arrest and prosecute all violators" of the aforementioned statutes concerning registration of motor vehicles and use of In Transit decals.

In affirming Childs' conviction, the Nebraska Court of Appeals concluded that the district court properly denied Childs' suppression motion, since "Childs was stopped because he had In Transit stickers on his windows" and Wyant's stop was "required by § 60-320," *State v. Childs*, 1 NCA 478, 481 (1992), for the reason that

> the only way to determine if the registration is current in a newly purchased vehicle is to stop the vehicle. Pursuant to the statute these random stops may only be directed at vehicles which carry In Transit stickers. The stops shall only be made for the first 15 days of vehicle ownership, and the officer must check the bill of sale and certificate of title. This type of stop is not the "standardless and unconstrained" governmental discretionary evil about which the U.S. Supreme Court was concerned in [*Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)].

1 NCA at 481-82. The Nebraska Court of Appeals continued:

> The Nebraska statute does not grant the police "unlimited interference with the use of the highways" [*United States v. Martinez-Fuerte*, 428 U.S. 543, 559, 96 S. Ct. 3074, 49 L. Ed. 2d 1116 (1976)], merely a 15-day window where the motorist may be stopped, § 60-320(3)(b). Lastly, the motorist, recognizing that the registration date on the In Transit stickers cannot be read unless the driver is stopped, is essentially on notice, and therefore the driver's concern or fright at being stopped is appreciably less. This court agrees with the trial court that based on the record in this case, the stop was neither arbitrary, oppressive, nor an indiscriminate abuse of discretion and is therefore consistent with the Fourth Amendment.

1 NCA at 482.

## SUPPRESSION OF EVIDENCE

*Childs' First Assignment of Error.*

As his first assignment of error, Childs claims that the district court erred by denying Childs' suppression motion concerning evidence obtained as the result of Wyant's stop and used by the

State to convict Childs.

*Standard of Review.*

In determining the correctness of a trial court's ruling on a motion to suppress evidence claimed to be constitutionally inadmissible, an appellate court will uphold the trial court's findings of fact unless those findings are clearly erroneous. In reviewing a trial court's findings on a suppression motion, an appellate court recognizes the trial court as the "trier of fact" and takes into consideration that the trial court has observed witnesses testifying regarding such motion.

*State v. Thomas,* 240 Neb. 545, 547, 483 N.W.2d 527, 530 (1992). Accord, *State v. Coleman,* 239 Neb. 800, 478 N.W.2d 349 (1992). See, also, *State v. Staten,* 238 Neb. 13, 469 N.W.2d 112 (1991); *State v. Abdouch,* 230 Neb. 929, 434 N.W.2d 317 (1989).

## CONSTITUTIONALITY OF THE STOP

*State's Burden.*

"If police have acted without a search warrant, the State has the burden to prove that the search was conducted under circumstances substantiating the reasonableness of such search or seizure." *State v. Staten,* 238 Neb. at 21, 469 N.W.2d at 118. Accord, *State v. Thomas, supra; State v. Juhl,* 234 Neb. 33, 449 N.W.2d 202 (1989); *State v. Abdouch, supra; State v. Vrtiska,* 225 Neb. 454, 406 N.W.2d 114 (1987), *cert. denied* 484 U.S. 863, 108 S. Ct. 180, 98 L. Ed. 2d 133.

*Constitutional Guarantee Against Unreasonable Search and Seizure.*

Both the U.S. Const. amend IV and Neb. Const. art. I, § 7, guarantee "[t]he right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated."

Thus, to determine whether evidence obtained after, and produced by, Childs' stop was constitutionally inadmissible, we must first determine whether Wyant's stopping Childs' car violated U.S. Const. amend. IV or Neb. Const. art. I, § 7.

In *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the U.S. Supreme Court considered the right to privacy

of a person who, while walking on a public street, was stopped and searched by police. In *Terry*, the Court observed:

> The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs. For, as this Court has always recognized, "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. R. Co. v. Botsford*, 141 U. S. 250, 251 (1891). . . . Unquestionably [Terry] was entitled to the protection of the Fourth Amendment as he walked down the street in Cleveland.

392 U.S. at 8-9.

Thus, a motorist on a public highway or street may have a legitimate expectation of privacy within a motor vehicle, or, as expressed in *Delaware v. Prouse*, 440 U.S. 648, 662, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979): "An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation." See, also, *State v. Crom*, 222 Neb. 273, 383 N.W.2d 461 (1986).

In *Delaware v. Prouse, supra*, a case involving a police officer's discretionary spot check for a driver's license and motor vehicle registration, the U.S. Supreme Court also stated:

> The Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief. . . . The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of "reasonableness" upon the exercise of discretion by government officials, including law enforcement agents, in order " 'to safeguard the privacy and security of

individuals against arbitrary invasions. . . .' " *Marshall v. Barlow's, Inc.*, 436 U. S. 307, 312 (1978), quoting *Camara v. Municipal Court*, 387 U. S. 523, 528 (1967).
440 U.S. at 653-54.

*Investigatory Stops; Basis.*

"[P]olice can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the fourth amendment." *State v. Staten*, 238 Neb. 13, 18, 469 N.W.2d 112, 116 (1991). Accord, *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992); *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992); *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991). "Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Staten*, 238 Neb. at 18, 469 N.W.2d at 116-17.

Reasonable suspicion, as a prerequisite for a constitutional investigatory stop, cannot be based only on a police officer's desire to verify compliance with motor vehicle registration statutes. In *Delaware v. Prouse, supra*, the U.S. Supreme Court emphatically rejected arbitrary police stops for the sole purpose of conducting a regulatory inspection of vehicles or drivers and offered the following observation and condemnation:

> When there is not probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations—or other articulable basis amounting to reasonable suspicion that the driver is unlicensed or his vehicle unregistered—we cannot conceive of any legitimate basis upon which a patrolman could decide that stopping a particular driver for a spot check would be more productive than stopping any other driver.

440 U.S. at 661.

If police, for an investigatory purpose, unconstitutionally stop a person, evidence obtained by a search of the person stopped is constitutionally inadmissible as the "fruit of the

poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). See *State v. Thomas, supra.*

> In *Wong Sun*, the U.S. Supreme Court required exclusion not only of evidence directly produced by a constitutionally invalid search but also evidence indirectly derived from the unconstitutional search. Reference to "fruit of the poisonous tree" in *Wong Sun* is a condemnation of the government's subsequent exploitation of a prior violation of a defendant's constitutional right. As expressed in *Wong Sun*, whether evidence is the derivative product of a constitutionally invalid search turns on the question " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " 371 U.S. at 488. (Quoting from J. Maguire, Evidence of Guilt (1959).)

*State v. Abdouch*, 230 Neb. 929, 943-44, 434 N.W.2d 317, 326 (1989). Accord *State v. Thomas, supra*. Thus, evidence obtained by an unreasonable search and seizure, including evidence that is indirectly derived from the unconstitutional search and seizure, is constitutionally inadmissible in a criminal trial.

In its opinion rendered in Childs' appeal, the Nebraska Court of Appeals cited *United States v. Martinez-Fuerte*, 428

Although there may be some circumstances " 'in which wholly lawful conduct might justify the suspicion that criminal activity was afoot,' " *State v. Thomas*, 240 Neb. at 559, 483 N.W.2d at 537 (quoting from *Reid v. Georgia*, 448 U.S. 438, 100 S. Ct. 2752, 65 L. Ed. 2d 890 (1980)), to determine whether stopping a person on a public street is constitutionally permissible, a court must assess all the circumstances surrounding the stop, including "all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is or has been or is about to be engaged in criminal behavior." *State v. Ebberson*, 209 Neb. 41, 45, 305 N.W.2d 904, 907 (1981).

In its opinion rendered in Childs' appeal, the Nebraska Court of Appeals cited *United States v. Martinez-Fuerte*, 428

U.S. 543, 96 S. Ct. 3074, 49 L. Ed. 2d 1116 (1976), as support for its conclusion that Wyant's stop of Childs was constitutionally permissible. However, *Martinez-Fuerte* can be readily distinguished from Childs' case: (1) In *Martinez-Fuerte*, the questioned stop occurred at a permanent border checkpoint, whereas Wyant stopped Childs while he was in the process of lawfully driving on a public street, and (2) according to the U.S. Supreme Court, decreasing the number of illegal entrants into the United States was a national policy, but posed formidable law enforcement problems. Ensuring compliance with vehicular registration statutes does not rise to the level of, and cannot be compared with, the enforcement of immigration laws in conjunction with a national policy.

Moreover, in *Martinez-Fuerte*, the Court recognized that random and roving patrol stops were constitutionally intolerable because such stops " 'would subject the residents of [the area] to potentially unlimited interference with their use of the highways, solely at the discretion of [police].' " 428 U.S. at 558-59. Therefore, *Martinez-Fuerte* and its involvement of a legitimate and permanent or stationary checkpoint is inapplicable to Childs' case.

### DID WYANT CONSTITUTIONALLY STOP CHILDS?

In our analysis of the undisputed testimony, Wyant, before stopping Childs, had no indication and, therefore, no real or factually based suspicion that Childs had been engaged in, was presently engaged in, or was about to engage in any criminal activity. According to Wyant, the sole and simple basis for his stopping Childs' car was to "check if the vehicle was within the in-transit period."

The State asserts that Wyant had a particularized suspicion that Childs was violating § 60-302 because, in every situation where a motorist drives a car displaying an In Transit decal, "the officer who sees a car being driven on a street without plates should suspect a violation is occurring in his presence." Brief for appellee at 6. If the State's argument that an In Transit plate furnishes a particularized suspicion of lawbreaking, and, therefore, criminal activity, the result would be a constitutionally suspect presumption that every motorist who

uses In Transit decals is presumed to be a lawbreaker involved in criminal activity. Yet, "[t]he presumption of innocence, although unarticulated in the U.S. and Nebraska Constitutions, is a basic component of a defendant's fair trial and, therefore, an aspect of due process in the criminal justice system." *State v. Jasper*, 237 Neb. 754, 759, 467 N.W.2d 855, 859 (1991). Accord *State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991). See, also, *Estelle v. Williams*, 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976).

Moreover, § 60-302, read in conjunction with § 60-320(3)(b), authorizes operation of a motor vehicle for 15 days provided that the vehicle properly displays In Transit decals.

It is true that § 60-320(3)(b) states that

> [u]pon demand of proper authorities, there shall be presented by the person in charge of such motor vehicle or trailer, for examination, a duly executed bill of sale therefor, a certificate of title, or other satisfactory evidence of the right of possession by such person of such motor vehicle or trailer.

However, the preceding statute does not direct police to stop all vehicles displaying In Transit decals. Hence, the inescapable questions are: For a stop to check the validity of In Transit decals, what is the standard for a police officer's stopping a particular vehicle but not another? On what basis does an officer stop an In Transit motorist from among all other In Transit motorists who, for all appearances and purposes, are lawfully traveling on a public highway or street? None of the Nebraska statutes implicated in Childs' case supplies a reasonable standard for stopping a motorist whose vehicle displays In Transit decals. Moreover, whatever might be statutorily prescribed or authorized for stopping In Transit motorists is subject to the constitutional safeguard against an unreasonable search and seizure. Without a reasonable standard for stopping motorists to check the validity of In Transit decals, a distinct and perhaps substantial segment of the motoring public is left to random and roving stops by police in the " 'unfettered discretion of officers in the field.' " *State v. Crom*, 222 Neb. 273, 277, 383 N.W.2d 461, 463 (1986) (quoting from *Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d

367 (1979)).

When faced with a question similar to that in Childs' appeal, courts in at least two other states have held that police exceed their authority for an investigatory stop of a vehicle when the basis for the stop is solely the display of temporary or In Transit license plates, placards, or decals. See *State v. Chatton*, 11 Ohio St. 3d 59, 63, 463 N.E.2d 1237, 1240 (1984), *cert. denied* 469 U.S. 856, 105 S. Ct. 182, 83 L. Ed. 2d 116: "[O]nce the police officer herein observed the temporary tags, appellee could no longer be reasonably suspected of operating an unlicensed or unregistered vehicle." See, also, *State v. Farley*, 308 Or. 91, 94, 775 P.2d 835, 836 (1989): "Upon seeing the temporary permit, the justification of any investigation was vitiated. Plain and simple, the officer had no statutory authority to proceed further. That authority ended with the officer's discovery that the traffic infraction he was investigating had not actually occurred."

We cannot accept that every motorist who operates a vehicle displaying In Transit decals waives the protection against an unconstitutional stop and invalid search and seizure as a consequence of the stop. First, even if In Transit decals were issued in return for a motorist's waiver of the constitutional protection against an unreasonable search and seizure, surrender of the constitutional guarantee in exchange for In Transit decals might well be too costly and excessive a price to pay for driving a vehicle on a public highway or street. Second, assuming that a waiver of the protection against an unreasonable search and seizure were constitutionally permissible under the circumstances, none of the evidence in Childs' case supports existence of a waiver, "the voluntary and intentional relinquishment of a known right, privilege, or claim, [which] may be demonstrated by or inferred from a person's conduct." *State v. Kennedy*, 224 Neb. 164, 170, 396 N.W.2d 722, 726 (1986). Accord, *Ehlers v. Perry, ante* p. 208, 494 N.W.2d 325 (1993); *Stuhr v. Stuhr*, 240 Neb. 239, 481 N.W.2d 212 (1992); *State v. Clear*, 236 Neb. 648, 463 N.W.2d 581 (1990).

We believe that there are other, less intrusive means to check the validity of In Transit decals without random and roving

stops for that purpose. However, we decline to comment about those other available means, lest our expression be an intrusion into the province of the legislative or executive branch, or both branches, appropriately controlling operation of motor vehicles on public highways and streets. Consequently, we hold that because Wyant lacked a reasonable and articulable suspicion or basis for the conclusion that Childs had been involved, was presently involved, or was about to become involved in any criminal activity, Wyant's stopping Childs violated U.S. Const. amend. IV and Neb. Const. art. I, § 7. See, *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992); *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992); *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991); *State v. Staten*, 238 Neb. 13, 469 N.W.2d 112 (1991). For that reason, the district court, pursuant to Childs' suppression motion and his constitutional objection renewed at trial, should have suppressed and excluded the convictive evidence obtained after Wyant unconstitutionally stopped Childs. Since the State has used constitutionally inadmissible and tainted evidence to convict Childs, his conviction should have been set aside.

## DUE PROCESS

Childs also contends that the State's dismissing the charge against him in the county court, after that court had sustained his suppression motion, and then refiling the same charge in the district court violates his right to due process. However, in view of our conclusion that the stop of Childs was unconstitutional, we need not address the due process question.

## CONCLUSION

In light of our holding in this further review of Childs' appeal, we reverse the judgment of the Nebraska Court of Appeals, reflected in *State v. Childs*, 1 NCA 478 (1992), and remand this cause to the Nebraska Court of Appeals with direction that the Nebraska Court of Appeals shall enter judgment reversing the district court's conviction of Childs and remand Childs' case to the district court for further proceedings.

REVERSED AND REMANDED WITH DIRECTION.