Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/21/2023 10:09 AM CST

State of Nebraska, appellee, v.
Timothy J. Temme, appellant.

___ N.W.2d ___

Filed November 14, 2023.    No. A-22-918.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.

2. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.

3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

4. **Appeal and Error.** An appellate court independently reviews questions of law in appeals from the county court.

5. **Criminal Law: Courts: Appeal and Error.** When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court.

6. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress, whether based on a claimed violation of the Fourth Amendment or on a statement's alleged involuntariness, an appellate court applies a two-part standard of review. Regarding historical facts, the appellate court reviews the trial court's findings for clear error. Whether those facts meet constitutional standards, however, is a question of law, which the appellate court reviews independently of the court's determination.

7. **Trial: Convictions: Evidence: Appeal and Error.** An appellate court will sustain a conviction in a bench trial of a criminal case if the

properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. In making this determination, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition.

8. **Constitutional Law: Search and Seizure.** The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, as does article I, § 7, of the Nebraska Constitution.

9. **Constitutional Law: Search and Seizure: Investigative Stops: Motor Vehicles.** A traffic stop is a seizure for Fourth Amendment purposes, and therefore is accorded Fourth Amendment protections.

10. **Constitutional Law: Investigative Stops: Motor Vehicles: Police Officers and Sheriffs.** The Fourth Amendment permits brief investigative stops of vehicles based on reasonable suspicion when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity.

11. **Police Officers and Sheriffs: Investigative Stops.** One of the circumstances for evaluating whether reasonable suspicion exists to initiate a stop is the nature of the area and the time of day during which the suspicious activity occurred.

Appeal from the District Court for Lancaster County, Lori A. Maret, Judge, on appeal thereto from the County Court for Lancaster County, Joseph E. Dalton, Judge. Judgment of District Court affirmed.

Matthew K. Kosmicki for appellant.

Yohance L. Christie, Lincoln City Attorney, and Marcee A. Brownlee for appellee.

Bishop, Arterburn, and Welch, Judges.

Arterburn, Judge.

INTRODUCTION

After a stipulated bench trial in the county court, Timothy J. Temme was convicted of driving under the influence (second offense). Temme appealed his conviction to the district court, which affirmed. Temme now appeals to this court. On

appeal, Temme alleges that the district court erred in affirming the county court's decision to overrule his motion to suppress and erred in finding there was sufficient evidence to support his conviction. For the reasons set forth herein, we affirm the decision of the district court that affirmed Temme's county court conviction for driving under the influence (second offense).

## BACKGROUND

On November 10, 2020, at approximately 11:30 p.m., Officer Shane Jensen with the Lincoln Police Department was working the night shift in the areas of the "Railyard" and "Haymarket" in Lincoln, Nebraska. A significant number of restaurants and bars are located in this area. While Jensen was patrolling in his cruiser, his attention was drawn to a vehicle parked in a diagonal parking stall on the northeast corner of Q Street. The vehicle's brake lights "illuminate[d]," then turned off, then turned back on. Jensen thought this was "strange." As he continued to patrol in the area, he drove by this vehicle at least three more times. Each time, Jensen observed the brake lights on the vehicle turn on and off. In addition, at one point, he observed that the vehicle had been turned on and was running, but later was turned off without ever having exited the parking stall. Based on his observations, Jensen believed that the driver might have been having some difficulty operating the vehicle.

Jensen parked his cruiser about a block to a block and a half away from the vehicle on Q Street, where he "regularly" parks to look for traffic violations. From this vantage point, Jensen could further observe the parked vehicle and its driver, who had now exited the vehicle. Approximately 3 or 4 minutes after parking his cruiser on Q Street, Jensen observed the driver of the vehicle, whom he later identified as Temme, begin to walk toward his cruiser. Ultimately, Temme approached the cruiser and asked Jensen what he was doing. When Jensen responded by asking Temme if he

needed anything, Temme responded that he did not need any assistance. Temme then walked away, but did not return to his vehicle—instead standing outside of a nearby restaurant. Based on Temme's behavior, Jensen believed that Temme was waiting for him to leave.

During Jensen's brief conversation with Temme, he became suspicious that Temme was intoxicated. Specifically, Jensen noticed that Temme appeared to walk in a slow and unsteady fashion. When Temme approached the cruiser, he could not walk in a straight line. Jensen also observed that Temme had "noticeabl[y]" slurred speech. Temme did not get close enough to Jensen's vehicle for Jensen to detect whether he smelled of alcohol. Jensen did note, however, that Temme was located in an area with a number of restaurants and bars. Jensen further noted that during his shifts working in that area, he would typically encounter people who had been drinking alcoholic beverages.

While Temme was still standing outside of his vehicle, Jensen drove away and continued his routine patrol of the area. When he returned to Q Street, he observed Temme to have returned to his vehicle and to be backing the vehicle out of the parking spot in order to proceed west on Q Street. Because Jensen suspected that Temme was impaired, he initiated a traffic stop "just after the vehicle had backed out" of the parking spot. Upon contacting Temme after the stop, Jensen was now able to detect a "strong" odor of alcohol coming from his person. Jensen asked Temme to perform multiple field sobriety tests, during which he showed impairment. Temme also admitted that he had consumed two alcoholic drinks in the half hour before he began driving. Ultimately, Temme was arrested. Subsequent testing of his breath revealed a result of .151 of a gram of alcohol per 210 liters of his breath.

On November 24, 2020, the State filed a complaint in the county court charging Temme with driving under the influence, second offense, contrary to Lincoln Mun. Code § 10.16.030 (2017). Temme filed a motion to suppress, asking

the court to suppress all statements and evidence obtained as a result of the violation of his "constitutional rights as guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments." At the hearing on the motion, Temme argued that Jensen did not possess either the probable cause or the reasonable suspicion necessary to initiate the stop of his vehicle and that, as a result, all of the evidence obtained after the stop, including the field sobriety tests and the results of the breath test, should be suppressed.

During the hearing on Temme's motion to suppress, Jensen testified regarding his observations and interactions with Temme prior to initiating the traffic stop on November 10, 2020, and regarding the traffic stop itself. In addition, he testified regarding his extensive experience and training in identifying impaired drivers, including his participation in hundreds of driving under the influence investigations and his contact with intoxicated individuals on a daily basis as a patrol officer.

The county court overruled Temme's motion to suppress. The court found that Jensen had reasonable suspicion that a crime was being committed at the time that he initiated the traffic stop. The court explained:

> Upon review of the entire record, the Court finds that Officer Jensen had a reasonable suspicion based on articulable facts to believe that a crime had been committed and to briefly detain [Temme]. This was based on his observations of [Temme's] brake lights going on and off while parked in a parking stall on a public street and his initial contact with [Temme] who was on foot when Officer Jensen observed [Temme] to have slurred speech, was walking slowly, and staggered as he walked away from their initial encounter. Officer Jensen believed [Temme] was intoxicated based on the behaviors that he observed.
>
> Officer Jensen's suspicion was confirmed when, as he approached [Temme] upon the stop, he observed

[Temme] to have a strong odor of alcohol coming from [his] person and [Temme] had red/watery/bloodshot eyes. [Temme] appeared unsteady on his feet, swaying as he stood still and had slurred speech. [Temme] admitted to consuming two drinks about half an hour prior to the stop and further, showed impairment on the [field sobriety tests]. The Court further finds that the officer had probable cause to arrest [Temme] for Driving Under the Influence of Alcohol.

A stipulated bench trial was held on June 15, 2021. The State offered various exhibits, depicting the circumstances surrounding the traffic stop and subsequent arrest of Temme. Temme renewed his motion to suppress, but did not offer any evidence. The court found Temme guilty of operating a motor vehicle while under the influence of alcohol in violation of the Lincoln Municipal Code. The court subsequently sentenced Temme to 18 months' probation, which was suspended pending any appeal.

Temme timely appealed his conviction to the district court. In his statement of errors, he alleged, first, that the county court erred by overruling his motion to suppress and finding that the evidence supported that Jensen had a reasonable articulable suspicion to initiate a traffic stop and, second, that the county court erred by finding sufficient evidence to convict him of driving under the influence.

In an order entered on November 9, 2022, the district court affirmed Temme's conviction. The court stated:

This court agrees with the [county] court, in that Officer Jensen had a reasonable suspicion based on articulable facts to conduct an[] investigatory stop of [Temme]. The Officer's suspicion was confirmed upon further contact with [Temme]. As [Temme's] sufficiency of the evidence [claim] rests upon the determination of the Motion to Suppress, it is the conclusion of the court that sufficient evidence was adduced to support the finding of guilty of Operating a Motor Vehicle while Under the Influence

of Alcohol. Therefore, the court finds that these assignments of error are without merit and concludes that the judgment of the County Court should be affirmed.

Temme now appeals to this court.

## ASSIGNMENTS OF ERROR

Temme appeals to this court, alleging that the district court erred in (1) affirming the county court's decision to overrule his motion to suppress and (2) finding sufficient evidence was presented in the county court to support his conviction for driving under the influence.

## STANDARD OF REVIEW

[1-5] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id*. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. But an appellate court independently reviews questions of law in appeals from the county court. *Id*. When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court. *Id*.

[6] In reviewing a trial court's ruling on a motion to suppress, whether based on a claimed violation of the Fourth Amendment or on a statement's alleged involuntariness, an appellate court applies a two-part standard of review. Regarding historical facts, the appellate court reviews the trial court's findings for clear error. Whether those facts meet constitutional standards, however, is a question of law, which the appellate court reviews independently of the court's

determination. *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013). See, also, *State v. Woldt*, 293 Neb. 265, 876 N.W.2d 891 (2016).

[7] An appellate court will sustain a conviction in a bench trial of a criminal case if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. *State v. Buol*, 314 Neb. 976, 994 N.W.2d 98 (2023). In making this determination, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition. *Id*. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

## ANALYSIS

Temme contends the traffic stop in this case violated the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, both of which protect individuals against unreasonable searches and seizures by the government. He argues that the November 10, 2020, traffic stop was not supported by either probable cause or reasonable suspicion and, thus, was unlawful. Upon our review, we affirm the decision of the district court, which affirmed the decision of the county court, finding that Jensen had reasonable suspicion to initiate the traffic stop of Temme's vehicle.

[8,9] The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," as does article I, § 7, of the Nebraska Constitution. A traffic stop is a seizure for Fourth Amendment purposes, and therefore is accorded Fourth Amendment protections. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018). As a general matter, the decision to stop an automobile is reasonable where the

police have probable cause to believe that a traffic violation has occurred. *Id*. Appellate courts have long recognized that a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. See, e.g., *id*.

[10] However, probable cause is not the only standard applied by courts to determine whether a traffic stop is reasonable under the Fourth Amendment. The Nebraska Supreme Court, in *Barbeau*, explained as follows:

> The U.S. Supreme Court has recognized the Fourth Amendment permits brief investigative stops of vehicles based on reasonable suspicion when a law enforcement officer has a "'particularized and objective basis for suspecting the particular person stopped of criminal activity.'" [See *Navarette v. California*, 572 U.S. 393, 396, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014), quoting *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981).] The reasonable suspicion needed to justify an investigatory traffic stop "'is dependent upon both the content of information possessed by police and its degree of reliability.'" [*Id*.] Like the probable cause standard, the reasonable suspicion standard "takes into account 'the totality of the circumstances— the whole picture.'" [*Id.*] A mere hunch does not create reasonable suspicion, but the level of suspicion required to meet the standard is "'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." [*Navarette v. California*, 572 U.S. at 397, quoting *United States v. Sokolow*, 490 U.S. 1, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989).]
>
> Nebraska courts have also applied the reasonable suspicion standard when considering the lawfulness of a traffic stop. In doing so, this court has recognized that "'[p]olice can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts,

that criminal activity exists, even if probable cause is lacking under the [F]ourth [A]mendment.'" [*State v. Childs*, 242 Neb. 426, 433, 495 N.W.2d 475, 479 (1993), quoting *State v. Staten*, 238 Neb. 13, 469 N.W.2d 112 (1991).] We have explained that "'[r]easonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.'" [*State v. Childs*, 242 Neb. at 433, 495 N.W.2d at 479-80.] When determining whether there is reasonable suspicion for a police officer to make an investigatory stop, the totality of the circumstances must be taken into account.

301 Neb. at 300-02, 917 N.W.2d at 921.

A determination that reasonable suspicion exists need not rule out the possibility of innocent conduct. *State v. Barbeau, supra.* The inquiry is not whether some circumstances may be susceptible of innocent explanation, but whether, taken together, they suffice to form a particularized and objective basis for the officer to suspect a crime is occurring, or is about to occur. *Id.*

The question of reasonable suspicion in this case, then, turns on whether, considering the totality of the circumstances, Jensen had reliable information that provided a particularized and objective basis for suspecting Temme was driving under the influence when he backed his vehicle out of the parking stall.

Temme does not challenge the district court's or the county court's factual findings concerning Jensen's information and observations, and we find no clear error in those findings. Applying the constitutional principles discussed above to those factual findings, we conclude Jensen had an objective basis, based on firsthand observation, for reasonably suspecting Temme was operating his vehicle while under the influence.

Jensen testified that he first observed Temme inside of his vehicle when the vehicle was lawfully parked in a parking

stall at about 11:30 p.m. His attention was drawn to the vehicle because the brake lights on the vehicle repeatedly turned off and on, even though the vehicle never moved from the parking stall. In addition, at one point, Jensen observed that the vehicle was turned on, but was quickly turned off again without exiting the stall. Jensen believed that the driver may be having trouble operating the vehicle. Instead of contacting Temme at that point, Jensen continued his patrol by parking his cruiser a block and a half away from Temme's vehicle. From this vantage point, Jensen could observe traffic, but could still watch Temme's vehicle.

While Jensen was sitting in his parked cruiser, Temme voluntarily approached the cruiser from the sidewalk. As Temme approached, Jensen observed that Temme was walking very slowly and appeared unsteady on his feet. He also was not walking in a straight line. When Temme spoke to Jensen, he observed that Temme's speech was noticeably slurred. After his interaction with Temme, Jensen believed, based upon his experience as a law enforcement officer, that Temme was under the influence of alcohol. Because Temme did not return to his vehicle at that point, Jensen did not detain him. However, Jensen continued to monitor Temme because he believed that Temme was waiting for him to leave the area. After circling the block in his cruiser, Jensen observed Temme to be backing his vehicle out of the parking stall. Jensen then initiated a stop of Temme.

[11] Jensen testified that when forming the opinion that Temme was under the influence, in addition to his direct observations of Temme, he also considered the area where Temme and his vehicle were located. The area housed many restaurants and bars that served alcohol. Such considerations about the area surrounding the traffic stop are proper. See *State v. Krannawitter*, 305 Neb. 66, 939 N.W.2d 335 (2020) (indicating that circumstances for determining reasonable suspicion include nature of area and time of day during which suspicious activity occurred). See, also, *State v. Thomas*,

240 Neb. 545, 483 N.W.2d 527 (1992) (reasonable suspicion existed based upon, among other things, defendant's operation of his vehicle in area of known drug traffic); *State v. Stubblefield*, 2 Neb. App. 307, 311, 509 N.W.2d 243, 246 (1993) (officer's "frisk" of defendant for weapons during traffic stop was justified, in part, on stop taking place in "'high drug area'"). But see *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992) (person's presence in area known for drug use by itself does not warrant suspicion that that person is involved in crime). Here, Jensen acted reasonably in considering the area in which he initiated the stop of Temme's vehicle in conjunction with all of his other observations when determining whether there was reasonable suspicion to support the stop.

Jensen also testified that he had specific training on how to identify impaired drivers and that he had participated in hundreds of driving under the influence investigations. He had daily contact with intoxicated individuals as part of his patrol of the "downtown area" in Lincoln.

When considering the totality of the circumstances, we determine that the investigatory stop of Temme's vehicle was supported by reasonable suspicion and comported with the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution. Jensen had reasonable suspicion to believe that Temme was driving under the influence when he observed Temme pull his vehicle out of the parking stall. As such, we affirm the decision of the district court to affirm the county court's ruling that overruled Temme's motion to suppress.

In his brief on appeal, Temme also asserts that there was insufficient evidence to support his conviction for driving under the influence. However, Temme concedes in his brief that such "argument relies upon the first assignment of error that the County Court erred by overruling his motion to suppress." Brief for appellant at 15. Given our conclusion that there was no error in denying Temme's motion to suppress,

we decline to address his sufficiency of the evidence argument any further. The testimony of Jensen regarding his observations of Temme both prior to and during the traffic stop and the results of Temme's chemical test constitute sufficient evidence to support his conviction.

## CONCLUSION

We affirm the decision of the district court that affirmed the county court's decision to deny Temme's motion to suppress and find him guilty of driving under the influence.

AFFIRMED.