IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MUMM

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVID K. MUMM, APPELLANT.

Filed March 24, 2026.    No. A-25-587.

Appeal from the District Court for Saunders County: CHRISTINA M. MARROQUIN, Judge.
Affirmed.

Steven J. Twohig, of Twohig Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

RIEDMANN, Chief Judge, and BISHOP and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

David K. Mumm was driving a pickup truck in Saunders County, Nebraska, when he was pulled over by a deputy sheriff due to Mumm's vehicle not having a front license plate. Mumm provided the deputy with information that the vehicle's back license plate was a dealer plate and therefore a front plate was not required. During the deputy's interaction with Mumm, he observed signs of intoxication. After further investigation, Mumm was placed under arrest for driving under the influence of alcohol. Charges for three traffic and alcohol-related offenses were subsequently filed against Mumm in the county court for Saunders County.

Prior to trial, Mumm filed a motion to suppress, arguing evidence was obtained as the result of an unconstitutional traffic stop. The county court denied the motion, concluding the traffic stop was a lawful investigatory stop supported by reasonable suspicion. After a stipulated bench trial, Mumm was found guilty of all three offenses. Mumm appealed his convictions to the district court.

- 1 -

Although the district court reversed one of Mumm's convictions for insufficient evidence, it agreed with the county court's denial of the motion to suppress and affirmed the other two convictions. Mumm now appeals to this court, again challenging the constitutionality of the traffic stop. We affirm.

## BACKGROUND

On September 28, 2024, at approximately 8:05 p.m., Deputy Dominic Leuck of the Saunders County sheriff's office was traveling south on Yutan Road and observed a white GMC Sierra pickup truck driving northbound with no front license plate. As the truck passed, the deputy looked in his side mirror and noticed the truck had a rear plate. According to the deputy, the rear plate was a "normal looking" "metro plate," and there "wasn't anything special about it." He explained that "metro" license plates are "designated to Douglas, Sarpy, or Lancaster County." The deputy did not observe any other designations, decals, or markings on the plate to suggest it was anything other than one belonging to a regular passenger vehicle.

Relying on his belief that Nebraska law generally requires a vehicle to display both a front and rear license plate, Deputy Leuck quickly turned his vehicle around, activated his vehicle's flashing lights, and initiated a traffic stop. The driver, later identified as Mumm, provided the deputy documentation showing that the truck was registered to a business authorized to use a "Personal Use Dealer" plate. Pursuant to Neb. Rev. Stat. §§ 60-3,100(2)(b) and (d) (Cum. Supp. 2024), "dealers" are issued "[o]ne license plate" that is required to be "prominently displayed on the rear of the registered motor vehicle or trailer." (We note that this statute was amended in 2025, but the amendments do not affect our analysis in this case; our references to the statute reflect the version in effect at the time of Mumm's offenses.) During his interaction with Deputy Leuck, Mumm exhibited signs of intoxication. After an investigation, Mumm was placed under arrest for driving under the influence of alcohol. A subsequent warrantless search of the truck by the deputy yielded an open can of beer that was "mostly full."

On October 22, 2024, the State filed a criminal complaint in the county court charging Mumm with three counts: count I, "DUI – 1st Offense," in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2021), a Class W misdemeanor; count II, "Improper Display of Plates," in violation of Neb. Rev. Stat. § 60-399 (Reissue 2021), a Class III misdemeanor; and count III, possessing an open container of alcohol in a vehicle, in violation of Neb. Rev. Stat. § 60-6,211.08 (Reissue 2021), a traffic infraction.

## MOTION TO SUPPRESS

On October 31, 2024, Mumm filed a motion to suppress "any statements, admissions or other evidence obtained" during the traffic stop. The motion alleged that Deputy Leuck stopped Mumm's truck without any "reasonable articulated suspicion" or, alternatively, that the deputy "exceeded the scope and limitation" of the stop after he obtained information that Mumm's truck was a "'one plate' vehicle." A hearing on Mumm's motion was held on December 5. The main factual dispute to be resolved by the county court was whether Mumm's rear plate bore any readily observable designations indicating it was a personal-use dealer plate.

At the hearing, Mumm offered a photograph of the truck's rear license plate (exhibit 2) which, according to him, accurately depicted its condition on the night of the traffic stop. The

photograph shows a green strip centered at the bottom of the plate. This green portion, inscribed with white letters, appears to read: "DLR - TAX PAID." However, the frame of the license plate obscures a large portion of the letters; only the top half of the words are visible. Mumm indicated the "DLR" designation was on the license plate when it was issued. Mumm initially testified that he took the photograph "in the week following" the traffic stop, but he conceded during cross-examination that the photograph may have been taken up to 25 days after his arrest.

Mumm was unsure whether the "DLR" designation was a decal or if it was printed on the plate. The Saunders County treasurer confirmed that the designation was a sticker separate from the rest of the plate. In her office, it was not customary to affix the sticker to a personal-use dealer plate when issued. However, the treasurer acknowledged the plate depicted in exhibit 2 was not furnished by Saunders County. She could not testify to whether the decal was attached when Mumm received the plate.

Other evidence contradicted Mumm's testimony regarding the "DLR" sticker. Deputy Leuck testified that on the night of the traffic stop, he did not observe any decals or markings on Mumm's rear plate indicating it was a personal-use dealer plate. When confronted with exhibit 2, he stated that the sticker depicted at the bottom of the plate was "not visible" when he pulled the truck over. The State also offered footage from the deputy's dashboard camera. Mumm was shown this footage and asked by the State to point out the green "DLR" sticker. He replied, "You can't see it because of the bright light." Shortly thereafter, he clarified his testimony, indicating he could see the decal. Mumm rejected the notion that he affixed the sticker to the plate sometime after his arrest.

On March 12, 2025, the county court issued an order overruling Mumm's motion to suppress. Resolving conflicts in the evidence in favor of the State, the court concluded that Deputy Leuck had reasonable articulable suspicion to stop Mumm's truck. In reaching this determination, the court credited the deputy's testimony that Mumm's rear license plate had "no identifying marks . . . that would suggest the plate was other than a regular passenger vehicle." The court was also not persuaded that exhibit 2 accurately depicted the appearance of the license plate at the time of the traffic stop. Upon its independent review of the deputy's dashboard camera footage, the court "was unable to observe the purported dealer plate designation." The court opined that even if the green "DLR" sticker was affixed to the rear plate, as Mumm testified, "it was not clearly visible" to the deputy. These facts, combined with the deputy's knowledge that Nebraska law generally required vehicles to display two license plates, created reasonable suspicion justifying the traffic stop.

### STIPULATED BENCH TRIAL AND APPEAL TO THE DISTRICT COURT

A stipulated bench trial was held on May 15, 2025. The county court received as evidence the transcript and all exhibits accepted at the motion to suppress hearing. The court also received an incident report authored by Deputy Leuck shortly after the traffic stop. Mumm renewed his constitutional objection. The court overruled his objection, and Mumm was found guilty of all charges. On count I (DUI), Mumm was sentenced to 6 months' probation, ordered to pay a $500 fine, and his driver's license was revoked for 60 days. A concurrent term of 6 months' probation was imposed on count II (improper display of plates). Mumm was ordered to pay a $50 fine on count III (possessing open container of alcohol in vehicle).

Mumm appealed his convictions to the district court, contending that the county court erroneously denied his motion to suppress and that there was insufficient evidence to support his conviction on count II (improper display of plates). The district court affirmed the county court's denial of Mumm's motion to suppress, largely adopting the county court's reasoning. However, the district court noted that count II of the State's criminal complaint alleged Mumm operated a motor vehicle without "displaying the proper number of plates." The district court concluded that the evidence adduced at the suppression hearing demonstrated Mumm's truck was a personal-use dealer vehicle and, as such, was required to display only a single rear plate. See §§ 60-3,100(2)(b) and (d). Since neither party disputed that a single rear plate was displayed on the night of the traffic stop, the district court reversed Mumm's conviction on count II and vacated the concurrent sentence of probation. It affirmed the other two convictions.

Mumm appeals.

## ASSIGNMENTS OF ERROR

Mumm assigns, restated and consolidated, that the district court erred in affirming the county court's denial of his motion to suppress because (1) the deputy lacked "reasonable articulated suspicion of a crime" to justify the traffic stop and (2) the deputy's investigation "exceeded the scope and limitation" of the stop when the deputy "had an opportunity to identify" the license plate and was able to "access information" regarding the vehicle being a "'one plate' registered vehicle." He also assigns as error (3) the county court's "fail[ure] to sustain objections" and dismiss his case based upon his motion to suppress and the evidence submitted.

## STANDARD OF REVIEW

Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *State v. Strawn*, 318 Neb. 859, 19 N.W.3d 761 (2025). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Falcon*, 319 Neb. 911, 25 N.W.3d 462 (2025). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate the Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Falcon, supra.*

## ANALYSIS

Mumm contends the traffic stop in this case violated the Fourth Amendment to the U.S. Constitution and article I, § 7 of the Nebraska Constitution, both of which protect individuals against unreasonable searches and seizures by the government. Citing to the Nebraska Supreme Court's decision in *State v. Childs*, 242 Neb. 426, 495 N.W.2d 475 (1993), he argues that the deputy's sole basis for initiating the stop was to verify compliance with motor vehicle registration statutes and, as such, was not supported by reasonable suspicion. Mumm also challenges the scope

of the investigation, claiming that the deputy could have checked the status of his truck's registration prior to stopping the vehicle.

At the suppression hearing, Mumm only challenged the traffic stop itself, not the warrantless search of the truck that took place after his arrest. He requested the county court confine its inquiry to the period between when the deputy "initially view[ed] the vehicle to the time [he] pull[ed] the vehicle over and approach[ed] the [driver's side] window." We also limit our analysis accordingly. We begin by setting out the constitutional principles governing traffic stops.

CONSTITUTIONAL PRINCIPLES GOVERNING TRAFFIC STOPS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ," as does article I, § 7, of the Nebraska Constitution. A traffic stop is a seizure for Fourth Amendment purposes, and therefore is accorded Fourth Amendment protections. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018).

As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Id.* It has long been recognized that a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *Id.*

But probable cause is not the only standard applied by courts to determine whether a traffic stop is reasonable under the Fourth Amendment. *State v. Barbeau, supra*. The Fourth Amendment permits brief investigative stops of vehicles based on reasonable suspicion when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. *State v. Barbeau, supra*.

Police can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the Fourth Amendment. *State v. Barbeau, supra*. Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. *Id.* In determining whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019).

TRAFFIC STOP WAS SUPPORTED BY REASONABLE SUSPICION

Mumm's main contention on appeal is that the traffic stop which led to his arrest was not supported by reasonable suspicion because the stop was "solely" premised on law enforcement's "desire to verify compliance with motor vehicle registration statutes." Brief for appellant at 13. He contends the traffic stop in this case was "a clear violation" of the rule set forth in *State v. Childs, supra*. Brief for appellant at 12.

In *Childs*, police saw a car driving with in-transit tags and stopped the car to check whether the tags were still within the valid timeframe for use. Under those facts, the Nebraska Supreme Court found there was no reasonable suspicion for the traffic stop. In doing so, the court rejected the State's argument that whenever police see a vehicle operating on the street with an in-transit tag, they can reasonably suspect a violation of the motor vehicle registration laws. In its analysis,

the court found it significant that before stopping the vehicle, police noticed "nothing suspicious or out of the ordinary" about the operation of the vehicle, the appearance of the vehicle, or the appearance of the in-transit tag. *State v. Childs*, 242 Neb. at 427, 495 N.W.2d at 477. The court concluded, "Reasonable suspicion, as a prerequisite for a constitutional investigatory stop, cannot be based only on a police officer's desire to verify compliance with motor vehicle registration statutes." *Id.* at 433, 495 N.W.2d at 480.

During cross-examination at the suppression hearing, Deputy Leuck agreed with Mumm that the traffic stop was at least partly "based on [his] desire to verify compliance with motor vehicle registration statutes." According to Mumm, the deputy's agreement with this characterization of the traffic stop is conclusive evidence that he was unconstitutionally seized per *Childs*. However, subsequent decisions have not applied *Childs* so narrowly. Notably, in *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996), the court found a traffic stop was justified by reasonable suspicion where an officer observed a vehicle driving with no license plates and no in-transit tags. Although the court concluded that the driver's operation of the vehicle in that case was "wholly lawful" under existing Nebraska law, it determined "there was no visible display that he was in compliance with motor vehicle registration statutes," unlike *Childs*. *State v. Bowers*, 250 Neb. at 160, 548 N.W.2d at 731. See, also, *State v. Kling*, 8 Neb. App. 631, 599 N.W.2d 240 (1999) (reasonable suspicion to stop vehicle displaying handwritten in-transit tags even though Nebraska law did not prohibit them). In a more recent discussion of these cases concerning traffic stops for apparent motor vehicle registration violations, the Nebraska Supreme Court opined:

> These cases illustrate that the determination of reasonable suspicion is fact specific and requires police to have a particularized and objective basis for suspecting a driver is violating the vehicle registration law. *Childs* teaches that an officer's desire to verify whether an in-transit tag is valid will not, without more, be sufficient to provide reasonable suspicion the vehicle is being operated in violation of the vehicle registration laws. But *Bowers* and *Kling* illustrate that when police have reliable information that provides a particularized and objective basis for suspecting the vehicle is being operated in violation of the vehicle registration laws, there is reasonable suspicion to conduct an investigatory traffic stop.

*State v. Barbeau*, 301 Neb. at 305, 917 N.W.2d at 923.

Both the county and district courts concluded that Deputy Leuck articulated objective facts giving rise to a reasonable suspicion that a motor vehicle registration law was being violated. During his testimony, the deputy stated that he pulled Mumm's truck over "[b]ecause it did not have a front license plate." While a rear plate was visible to the deputy, he noted that it appeared to be a "normal looking" "metro plate" with no observable decals or designations to suggest it was a personal-use dealer plate. Although Mumm introduced evidence to show that a green "DLR" sticker was readily observable on his rear plate, Deputy Leuck testified it was "not visible" on the night of the stop. The county court resolved this conflicting evidence in favor of the State. The district court, in affirming the county court, explained that the deputy's observations, combined with his knowledge that "Nebraska law generally requires a front and rear license plate," supported the denial of Mumm's motion to suppress.

Mumm argues that Deputy Leuck still lacked reasonable suspicion for the traffic stop, notwithstanding his observations and knowledge of the law. He contests the district court's assertion that Nebraska law generally prescribes two license plates. He calls this an "incorrect assumption" and "an imaginary default rule." Brief for appellant at 11. While § 60-3,100(2)(a) provides that "two license plates shall be issued for every motor vehicle" "[e]xcept as otherwise provided in this subsection," he points out §§ 60-3,100(2)(b) and (d) mandate the issuance of "one license plate" for "dealers," and "[w]hen only one plate is issued," it is required to "be prominently displayed on the rear of the registered motor vehicle or trailer." Although much of the evidence adduced at the suppression hearing concerned the visibility of the green "DLR" sticker, there appears to be no statutory requirement that a personal-use dealer plate have any decal or other unique markings affixed to it. Compare Neb. Rev. Stat. § 60-3,116 (Reissue 2021) ("[p]ersonal-use dealer license plates; fee"), with Neb. Rev. Stat. § 60-3,114(2) (Reissue 2021) ("[d]ealer or manufacturer license plates shall display, in addition to the registration number, the letters DLR"). Due to these statutory provisions, Mumm argues that the mere absence of a front license plate cannot constitute reasonable suspicion, especially when a rear plate is prominently displayed.

We are cognizant that the testimony and evidence adduced at the suppression hearing showed that the truck was validly registered and had been issued a single personal-use dealer plate. However, although the plate was prominently displayed on the rear of the truck, there was conflicting evidence as to whether it had visible "identifying marks" to suggest it was "other than a regular passenger vehicle." The deputy testified that he did not observe any decals or markings on Mumm's rear plate indicating it was a personal-use dealer plate; the county court, upon reviewing the video evidence, stated it was "unable to observe the dealer plate designation." The county court further stated that "if the green sticker was affixed, as [Mumm] asserts, it was not clearly visible as such." After our review of the evidence, including the footage from the deputy's dashboard camera, we find no clear error in the trial court's findings. And based on those findings, we conclude that the deputy had reasonable articulable suspicion to initiate a traffic stop of Mumm's vehicle.

Mumm argues that such a conclusion constitutes an "unconstitutional presumption that every motorist who uses a legitimately procured one plate dealer vehicle is presumed to be a lawbreaker involved in criminal activity." Brief for appellant at 11. We disagree. The facts present in this case indicate no visible markers that the rear plate was a dealer plate, thus supporting the traffic stop due to the lack of a front plate. See § 60-3,100(2)(a) ("two license plates shall be issued for every motor vehicle"). The very purpose of investigatory stops is to clarify ambiguous situations. *State v. Morrissey*, 19 Neb. App. 590, 810 N.W.2d 195 (2012). Under these circumstances, the ambiguous, but potentially lawful, conduct of driving without a front license plate, in conjunction with the deputy's observations and knowledge, reasonably justified the suspicion that a traffic violation was occurring. Further, law enforcement cannot presume that every vehicle with only a rear license plate means the plate is a properly issued dealer plate; if the dealer indicators are not visible, as in this case, an investigatory traffic stop may be necessary for clarification.

Accordingly, we agree with the county and district courts that, under these specific facts, the deputy had reasonable suspicion to justify the stop of Mumm's vehicle.

## SCOPE OF TRAFFIC STOP

Mumm next contends that Deputy Leuck "exceeded the scope and limitation of such stop" because he "had an opportunity to identify [Mumm's] license plate" and "was able to access information pertaining to [his] vehicle as being a 'one plate' registered vehicle." Brief for appellant at 12. The entirety of his argument is that the deputy "could have ran/checked [his] plates prior to pulling him over, he simply elected not to." *Id*.

However, the Fourth Amendment permits brief investigative stops of vehicles when law enforcement has a particularized and objective basis for suspecting the particular person stopped of criminal activity. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018). We have already concluded that such a basis was present here. Mumm appears to argue that law enforcement should be required to run a license plate prior to conducting an investigative stop. However, he provides no authority to support such a requirement. While it may have been theoretically possible for the deputy to conduct a preliminary check of Mumm's rear plate before or while quickly turning his vehicle around to initiate the traffic stop, he was not required to do so. Further, it has been said that "police must be permitted to act *before* their reasonable belief is verified by escape or fruition of the harm it is their duty to prevent." *State v. Morrissey*, 19 Neb. App. at 596, 810 N.W.2d at 200. (Emphasis in original). Accordingly, we are not persuaded by Mumm's argument that the deputy was obligated to first run or investigate his license plate before pulling him over.

## FAILURE TO SUSTAIN OBJECTIONS

In his final assigned error, Mumm asserts that the county court "failed to sustain objections," and failed to dismiss his case based upon his motion to suppress. Brief for appellant at 6. We have already addressed the motion to suppress, so we consider only Mumm's broad assertion that the court "failed to sustain objections."

In the argument section of Mumm's brief regarding this assigned error, he states that there is "no two-plate rule that would allow the Deputy to unconstitutionally seize [him]," the deputy "failed to establish" he was doing "anything illegal or about to do anything illegal," and the deputy's basis for the stop "violates case law set forth" in *State v. Childs*, 242 Neb. 426, 495 N.W.2d 475 (1993). Brief for appellant at 13. He then concludes this argument section by once again asserting that the county court's rulings "create a presumption that every one-plate dealer vehicle is committing a crime," which we addressed above. *Id*. There is no mention of what particular objections Mumm is challenging. We see that earlier in a separate section of his brief, he notes that he objected to Deputy Leuck's testimony that a two-plate default rule exists under Nebraska law, but that he was "incorrectly overruled" by the county court. *Id*. at 9.

Not only is this assigned error broadly stated but Mumm's argument offers no clarifying details. Assuming the county court's overruling of the above-noted objection is the subject of this assigned error, Mumm does not explain the basis for the objection nor explain why the court was wrong in overruling it. He simply contends that he was "incorrectly overruled." *Id*. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025). Accordingly, we will not consider this broadly stated and insufficiently argued assigned error. See *Timothy L. Ashford, PC LLO v. Roses*, 313 Neb. 302, 984 N.W.2d 596 (2023)

(conclusory assertions unsupported by coherent analytical argument fail to satisfy requirement that alleged error be specifically argued).

## CONCLUSION

For the foregoing reasons, we conclude that Mumm's motion to suppress was properly overruled. We therefore affirm his convictions for driving under the influence of alcohol and possessing an open container of alcohol in a vehicle.

AFFIRMED.